## No. 8637.

### HUNTER *v.* QUAINTANCE.

Decided July 2, 1917.    Rehearing denied December 3, 1917.

Action for damages to an automobile. Judgment for plaintiff.

### *Reversed.*

1. DAMAGES—*Pleading.* Alleged damages for the loss of the use of a pleasure automobile, being special in character, must be pleaded.

2. NEGLIGENCE—*Proof—Instructions.* When reliance is placed on particular acts of negligence, the proofs must be confined to those acts and the jury must be limited to a consideration of the specific acts charged.

*Error to the District Court of Jefferson County, Hon. H. S. Class, Judge.*

Mr. GERALD HUGHES, Mr. J. W. BARNES, for plaintiff in error.

Mr. REES D. REES, Mr. A. D. QUAINTANCE, for defendant in error.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

THE defendant in error recovered a judgment against the plaintiff in error in an action for damages to an automobile, alleged to have been caused by negligence.

The complaint charged that the defendant and his servant "so carelessly and negligently drove and operated said Pierce Arrow automobile that, * * * by reason of said carelessness and negligence defendant's Pierce Arrow automobile struck and forced plaintiff's Oakland automobile off of the aforesaid highway and overturned, broke, wrecked and injured it, to plaintiff's damage in the sum of $800.00."

One witness for plaintiff, who was riding in plaintiff's car, testified that he heard the defendant's car strike plaintiff's car, and that he felt a jar; but none of the three other occupants of it gave any testimony to that effect. Plaintiff's brother, who was driving the car, testified that while he was going toward Golden, at 20 to 25 miles per hour, he saw a car with very bright and dazzling lights coming towards him, and that when it was about 10 feet from him, he turned his car to the right, and the defendant's car "shot between the two cars"; that his car skidded when it struck the soft part of the road, and turned over. He knew there was a car behind him when he began to turn out. He said, "My car was forced off the road by the car that passed me."

Another of the occupants testified that "after the Hunter car came in we waved a little, and turned over. As we were passing, Mr. Hunter's car cut in when we were almost abreast and went in front of us."

The other occupant testified that the plaintiff's car turned to the right as the Hunter car was passing; "the Hunter car came along side; something whizzed past us; the Hunter car was going faster." Evidence was received to show the cost of repairing the plaintiff's car, the value of its use for two months, and the deterioration of value after such an accident. The jury found for the plaintiff and assessed his damages at $515.00.

A motion for a new trial was overruled on condition that plaintiff remit $168.50 from the verdict. This sum having

been remitted judgment for plaintiff was entered for $346.50.

It will be necessary to discuss only a part of the errors assigned, the first of which is that it was error to admit evidence on or submit to the jury the question of the plaintiff's damage by being deprived of the use of the car. It is urged that, the evidence showing that the car was used only for purposes of pleasure, there is no basis for estimating the damage from the loss of such use. Cases are cited which hold that the damage from such a source is too speculative to be considered. We are inclined to agree with that opinion.

But there is a more serious objection to the evidence on that point in the fact that damage from loss of use was not pleaded. Such damage is special and without the averment of the facts from which it is to be inferred, the defendant had no reason to be prepared to meet it. If it was to be included in the damages, it was important to determine not only how long the car was out of use, but whether or not the disuse for such a time was necessary. Clearly, the plaintiff could not in any event, recover for such a loss unless he showed that the repairs were made with reasonable promptness. On that question the defendant was entitled to notice and time for preparation, and that is the basis of the rule that special damages must be specially pleaded. The rule is too well established to require citation of authorities to support it.

It is also assigned as error that the question of negligence submitted to the jury was not confined to the act of negligence alleged in the complaint as the cause of the accident. This court is committed to the doctrine that when reliance is placed on particular acts of negligence the proofs must be confined to those acts. *Denver Cons. E. Co. v. Walters,* 39 Colo. 301, 89 Pac. 815. This rule also is based upon the just requirement that the defendant be not called upon to defend on a charge of which he has no notice. He may properly conclude that the case will not involve his acts other than those charged to have caused the injury.

It follows, of course, that the jury must be limited to the consideration of the specific acts charged.   Instruction No. 3, violates this rule.   It reads:

"The court instructs the jury that if you believed from the evidence the injuries complained of were caused by the negligence or carelessness of the servant or chauffeur of Hunter in the course of his employment, either with or without negligence or fault on the part of the driver of Quaintance's automobile, or without any such negligence on his part as contributed to the injuries complained of, or with no want of such care and skill on his part as could reasonably be expected of a man of ordinary prudence and skill in such a situation, then you must find for Quaintance."

This left the jury at liberty to find, if they saw fit, that the injury resulted from any act of defendant which they thought was negligent.   Possibly they found that defendant was negligent in coming up so fast without warning; or that the injury was caused by defendant's car cutting in ahead of plaintiff's car.   The giving of that instruction was error.

Counsel contend that there was error in the admission of evidence, and in the overruling of the motion for a new trial on condition that plaintiff remit nearly one-third of the damages fixed by the verdict.

If there were error in these matters it may not occur again on another trial, and as the judgment must be reversed for the reasons above given, those assignments need not be considered.

The judgment is reversed, with leave to either party to amend as he may be advised.

Chief Justice White and Mr. Justice Garrigues dissent.

GARRIGUES, J., dissenting.   I cannot agree with the majority opinion.

The evidence shows that the Quaintance car, a 40 horse power Oakland, had been in use only nine months, was in good condition, and cost $2,050.   It was going west toward Golden at night on a traveled roadway 16 feet wide, with

soft banks or irrigating ditches on each side, and met a car coming in the opposite direction, toward Denver. At this time, the Hunter car, a 60 horse power Pierce-Arrow, was coming at a very high rate of speed behind the Quaintance car. Just as the two cars met, the Hunter car, without giving any signal or warning and going at the rate of 50 miles an hour, attempted to pass and did pass the Quaintance car diagonally between the two cars, in front of the Quaintance car and either striking or pinching it, forced it off the road. Whether actually struck or not, it was in fact forced or pinched off by the Hunter car and somersaulted, coming down in an irrigating ditch. The car was wrecked, wheels broken, fenders bent and injured, body split and broken, top torn off body, radiator, lamps and windshield smashed, and engine racked and thrown out of alignment, completely demolishing the car. The actual cost of repairing it, about which there is no dispute or question of any kind, and which was paid, was $324.20, and the undisputed evidence shows that the depreciation of the car was from $100 to $150. The court entered judgment for $346.50, or $22.30 more than the actual outlay in having the car repaired.

The driver of the Quaintance car testified:

"Hunter's car forced my car off the hard beaten road and onto the soft, sandy, sloping bank. It skidded a second and then turned completely over, turning a somersault. I was on the extreme right of the hard beaten road and when the Hunter car shot in ahead of me, it forced or pinched me off the road."

Another witness testified:

"In shooting in between us in such a fashion, the back part of the Hunter car struck our car. The noise was clearly audible to me in the back seat. I felt a sudden jar. The car swerved and skidded for a second and then turned completely over and lit in the irrigation ditch. The contact between the Hunter car and ours was distinctly audible. But for the Hunter car shooting in between us and

striking and forcing us off the road, the accident would not have happened."

Another witness testified:

"Cregar (the driver of the Quaintance car) kept on the right-hand side of the road, and just as we were about to meet the car coming from Golden, the Hunter car whizzed right by my ear, right between the car coming from Golden and our car, and that's the last I remember until I found myself lying on the ground beside the machine."

Another witness testified:

"There was not room enough for three such cars to pass on the road where the accident happened."

Another witness testified:

"Just as we were about to meet the car coming from Golden, Hunter's car, which was behind us, shot past us on our left and between us and the machine coming from Golden. The three machines were almost abreast."

The court instructed the jury:

### Instruction No. 1.

"The court instructs the jury that this is an action brought by plaintiff, Charles F. Quaintance, to recover $800 from the defendant, A. V. Hunter, for damages alleged to have been sustained by the said Quaintance through injuries to his 40 horse power Oakland automobile, on the evening of August 31, 1911, which damages said Quaintance alleges were occasioned by the fault, negligence, and carelessness of said Hunter's chauffeur in operating said Hunter's 60 horse power Pierce-Arrow automobile in such a manner as to strike and force said Quaintance's automobile off of the highway, thereby causing it to be overturned and damaged."

### Instruction No. 3.

"The court instructs the jury that if you believe from the evidence the injuries complained of were caused by the negligence or carelessness of the servant or chauffeur of

Hunter, in the course of his employment as such servant or chauffeur, either without any negligence or fault on the part of the driver of Quaintance's automobile, or without any such fault or negligence on his part as contributed to the injuries complained of, or with no want of such care and skill on his part as could reasonably be expected of a man of ordinary prudence and skill in such a situation, then you must find for said Quaintance."

### Instruction No. 8.

"If the jury believe from a preponderance of all the evidence in this case that defendant, by any act or acts of negligence with which he is charged, as explained in these instructions, and without fault on the part of the driver of plaintiff's automobile, struck and forced the driver of plaintiff's automobile to run such automobile off of the aforesaid highway, and that the same resulted in overturning, breaking, and injuring said auto, then the jury should find the defendant guilty and assess the plaintiff's damages at such sum, not exceeding $800, as they may believe, from all the evidence, he has sustained."

### Instruction No. 10.

"The court instructs you that it is the duty of a person operating an automobile on a highway to move it at such a rate of speed as is reasonable under the circumstances, and so as not to endanger others in the enjoyment of such highway. He is bound to anticipate that he may meet or overtake others at any point on the highway and he must keep a proper lookout for such others and keep his machine under such control as will enable him to avoid a collision with or injury to others, in the observance likewise of proper care and caution on their part, and, if necessary, he must slow up and even stop his auto to accomplish such ends."

### Instruction No. 12.

"The court instructs the jury that if you believe from the preponderance of the evidence that Hunter or his chauf-

feur, by negligently attempting to pass Quaintance's automobile, if you so find that he was negligent in said respect, placed said automobile in a position of imminent peril, Hunter cannot complain if the driver of Quaintance's automobile committed an error of judgment, if you find he did so commit the same, in not instantaneously choosing the best course to pursue, in which event the error in judgment cannot, in law, be imputed to him as contributory negligence."

### Instruction No. 13.

"The jury is instructed that the ground of plaintiff's suit against the defendant is negligence, and that negligence is not to be presumed by you from the mere fact that this accident occurred but it must be established by the plaintiff by what is known as a preponderance of evidence."

### Instruction No. 14.

"The court instructs the jury that plaintiff's complaint and right to recover anything against the defendant is based upon the specific allegation that 'by reason of said carelessness and negligence, defendant's Pierce-Arrow automobile struck and forced plaintiff's Oakland automobile off the aforesaid highway'; and the burden of proving this particular allegation is upon the plaintiff, and unless you find from a preponderance of the evidence that defendant's said automobile did strike and force plaintiff's said automobile off said highway so as to cause the injury complained of, 'by reason of said carelessness and negligence,' then your verdict must be for the defendant."

### Instruction No. 15.

"In order to entitle the plaintiff to a verdict against the defendant, plaintiff must show, and you must find, by a preponderance of the evidence, that the defendant was guilty of negligence, that is, want of care, as explained in these instructions and you must further find by such preponderance of the evidence that the negligence was the

proximate cause, that is, the direct and not the remote cause of the injury."

### Instruction No. 17.

"The court instructs the jury that the correct measure of damage in this case is the reasonable cost of repairing said Quaintance's automobile in order to put it in as good condition as it was in before the injury complained of, plus any depreciation in the value of said Quaintance's automobile, by reason of said injury, if any, plus any direct loss the said Quaintance may have sustained by reason of the loss of the use of said automobile during a reasonable length of time for its repair, but in no case an amount in the aggregate exceeding $800, the amount prayed for in the complaint."

The instructions contain a statement of the basis of the cause of action, and the specific grounds of negligence which plaintiff must establish from the evidence to recover. Instruction 3, upon which the case is reversed, was not given to the jury as a statement of the basis of the cause of action or the ground of recovery, but to explain the principle that Hunter would be responsible for the negligence of his driver and could not escape the charge of negligence because some one else was driving the machine. The jury were thoroughly instructed as to the specific grounds of negligence and distinctly told what plaintiff must prove before he could recover. Merely because in explaining that Hunter was liable for the acts of his driver, the general term negligence was used instead of specifying again the grounds of negligence, did not mislead the jury. They were properly instructed once as to the specific grounds of negligence, and it was not necessary to repeat these grounds every time the word negligence was used.

The roadbed was but 16 feet wide, and as the two cars met, going in opposite directions, the driver of the Hunter car shot in between them and attempted to pass and did pass the Quaintance car at an unusual and dangerous rate of speed. There is plenty of evidence, which the jury must

have believed, that by doing so it struck and forced the Quaintance car out of the road. But if the Hunter car did not strike the other car, if it simply cut in ahead at a speed of 50 miles an hour, or a dangerous rate of speed, and forced or pinched the other car out of the road, he would be liable, and there would be no material variance between the pleadings and evidence. The complaint alleged that the car was struck and forced off the road. This was an allegation that it was forced off the road as well as struck, and whether it was struck or not is immaterial. Defendant could not have been prejudiced on the trial by failure to prove that his car struck as well as forced the other car off the road into the ditch. But why discuss this, when the evidence shows it was struck as well as forced off the road.

The reasonable value paid for repairing the car was to all intents and purposes a liquidated amount. So far as the amount is concerned, it was not disputed or questioned by anybody. The controversy was over any liability whatever. It seems reasonable that a car could not be wrecked and repaired like this one without depreciation in value, and there was abundant testimony that the depreciation was from $100 to $150. It must not be forgotten that this car had only been in use a short time, was in good condition, and cost over $2,000. The judgment entered was for $346.50, from which deducting the liquidated damages of $324.20, leaves $22.30, and on account of this it is held the judgment should be reversed. Defendant cannot complain because the $22.30 is a less amount than the depreciation to the car as shown by the evidence.

Moreover, I think plaintiff was entitled to recover for the use of the car for the time reasonably occupied in its repair. This machine was not kept for pleasure; it was kept for family purposes, and had been driven on an average of only 15 miles per day.

The automobile has passed the pleasure stage, simply and has come to stay, not merely as a pleasure vehicle, but as a necessity in our business life. It is seldom that a horse is now seen on the streets of our cities, and already farm-

ers are bringing in their chickens, butter, and eggs to the market in autos. I cannot see why depriving the owner of the use of his machine is not as actionable as depriving one of the use of a cow, a horse, or a wagon. Anyhow, this matter of $22.30 could be easily adjusted without reversing the case and ordering a new trial, plaintiff offering in open court on oral argument to remit all of the judgment except the $324.20, about which amount there is no dispute, save that defendant denied any liability whatever, and upon this the jury found against him,

Courts of review do not now make a practice of reversing cases unless it is clearly established that some error was committed on the trial which prejudiced the substantial rights of one of the parties, and I am sure the record in this case discloses no such error.

I am authorized to state that Chief Justice White concurs in this dissenting opinion.