[Sac. No. 5637. In Bank. Mar. 28, 1944.]

J. R. VALENCIA, Respondent, v. SHELL OIL COMPANY (a Corporation) et al., Appellants.

J. T. Blalock and A. P. Black for Appellants.

Oliver J. Carter, Daniel S. Carlton and J. Everett Barr for Respondent.

GIBSON, C. J.—This is an appeal from a judgment for plaintiff in an action for damages resulting from loss of the use of a gasoline distributing truck.

Prior to September 27, 1935, plaintiff was engaged in the

operation of his own service station and in the wholesale distribution of gasoline, on a commission basis, for the Mileage Gasoline Company. On that date plaintiff's truck, which was used in connection with his business as a wholesale distributor, was being driven on the highway between Dunsmuir and Weed in Siskiyou County when it was hit by a tank that fell from a truck belonging to defendant Shell Oil Company. Defendant company's truck was being operated at the time by its employee, defendant Foster. Plaintiff's truck was damaged to such an extent that it could not be continued in use until repaired. It was taken to a garage in Weed and repaired at a cost of $222.30. The trial court found that defendant company ordered the repairs to be made and agreed to pay for them, and that defendant company likewise undertook to furnish and pay for the hire of a truck to be used by plaintiff while the damaged truck was being repaired.

A substitute truck was furnished by defendant company for a period of three days, and plaintiff was thereafter unable to obtain a truck to use in his business in place of the damaged vehicle. The repair work was completed on October 22, 1935, and the proprietor. of the garage sent the bill to defendant company and notified plaintiff of the completion of repairs. On November 15, 1935, the insurer of defendant company requested plaintiff to execute a release of all claims arising out of the accident as a condition to its payment of the repair bill. Plaintiff refused to sign the release and demanded $800 for asserted damages to his business caused by loss of the use of the truck. On December 3, 1935, the insurer sent a letter to the proprietor of the garage informing him that unless the release was signed he should look to plaintiff for payment of the repair bill. The owner of the garage refused to deliver the truck until the bill was paid.

On January 17, 1936, plaintiff commenced this action seeking damages in the sum of $11,655, consisting of (1) loss of sales, $1,500, (2) loss on contracts, $10,000, and (3) cost of use of substitute truck, $155. Just prior to trial on March 18, 1937, defendant company paid the repair bill and the cost of the use of the substitute truck, such payments being made pursuant to a stipulation that they would not constitute an admission of liability. At the beginning of the trial, counsel for defendants stipulated that the accident which

caused the damage to plaintiff's truck was "the direct and proximate result of the negligence of the defendant," and the cause was tried solely on the issue of damages. At the conclusion of the trial, plaintiff was granted leave to amend his complaint to conform to proof by showing loss of use of the truck for a period of approximately seventeen months. The court made findings and entered judgment for plaintiff in the sum of $4,416.67, representing damages for loss of use of the truck during that period at the rate of $250 a month.

Where a vehicle is damaged by the wrongful act of another, the owner is entitled to recover for the damage done to the vehicle and for the loss sustained by being deprived of its use. (*Marshall* v. *Golden State Milk Products Co.*, 113 Cal.App. 43, 45 [297 P. 109]; *Menefee* v. *Raisch Improvement Co.*, 78 Cal.App. 785, 789 [248 P. 1031]; 78 A.L.R. 910.) A person injured by the wrongful act of another is bound, however, to exercise reasonable care and diligence to avoid loss or minimize the resulting damages and cannot recover for losses which might have been prevented by reasonable efforts and expenditures on his part. (*Schultz* v. *Town of Lakeport*, 5 Cal.2d 377, 383 [54 P.2d 1110]; *Pretzer* v. *California Transit Co.*, 211 Cal. 202, 208 [294 P. 382]; *Vitagraph, Inc.* v. *Liberty Theatres Co.*, 197 Cal. 694, 697 [242 P. 709]; Rest., Torts, sec. 918 et seq.; 15 Am.Jur. 420 et seq.; 25 C.J.S. 499 et seq.) Accordingly, an owner's recovery for being deprived of the use of a damaged vehicle is generally to be determined with reference to the period of time reasonably required for the making of repairs. (*Menefee* v. *Raisch Improvement Co., supra; Crain* v. *Sumida,* 59 Cal.App. 590, 597 [211 P. 479].)

Defendants contend that in awarding damages, measured by the value of the use of plaintiff's truck for a period in excess of seventeen months, the trial court failed to apply the rule of mitigation of damages. They argue that repairs to the truck were completed on October 22, 1935, twenty-five days after the accident; that possession of the vehicle could then have been obtained by the payment of the cost of repairs which amounted to $222.30; that plaintiff was able to make such payment but refused to do so; and that, therefore, any loss suffered by plaintiff after that date could have been reasonably avoided by him and must be attributed to his own negligence. On the other hand, plaintiff contends that he was relieved of the duty to minimize damages by having the

truck repaired or paying the repair bill for the reasons that (1) defendant company undertook to have the truck repaired and he was not required to assume the burden of its contract with the repairman, and (2) he lacked financial ability to pay the repair bill.

Repairs to the truck were completed on October 22, 1935, and possession of the vehicle could have been obtained thereafter by payment of the bill. As previously noted, however, the trial court found that defendant company promised plaintiff it would repair the truck at its own expense and that it placed the damaged truck in a garage with instructions to the garage owner to repair it. Although defendants challenge this finding, there is evidence in the record to support it. Plaintiff testified that he did not order repairs to be made and that defendant company secured for him a substitute truck with which to distribute gasoline. The mechanic who made the repairs testified that immediately after the accident he took part in a conversation between plaintiff and representatives of defendant company, that he brought the truck into a garage at Weed at the request of "a representative of the Shell Oil Company," that he was requested to repair the truck by "somebody employed by the Shell Oil Company," and that the "Shell Oil Representative" asked him if he could locate a truck for plaintiff's use while the repairs were being made. He further testified that after towing the truck into the garage he telephoned defendant company to determine "if it was okeh to proceed with the truck" and was informed that it was "okeh." The garage owner testified that after the truck was repaired he sent the bill to defendant company and that by a letter dated December 3, 1935, the defendant company's insurer informed him that "unless Mr. Valencia will sign the releases which we have forwarded to him, we would suggest that you look direct to him for your repair bill." The trial court could find from the foregoing evidence that the defendant company promised to have the truck repaired and authorized the repairs. The promise of the wrongdoer to take such steps to minimize damages was properly considered in connection with plaintiff's failure to pay the repair bill, and the trial court was justified in concluding that defendant company's promise and conduct excused plaintiff from the duty to minimize damages in that manner, so long as plaintiff had reason to believe defendant company would perform. (*Osterhoudt* v. *Hedger*

*Transportation Co., Inc.,* 54 F.2d 282, 284; *Norfolk & W. Ry. Co.* v. *Amicon Fruit Co.,* 269 F. 559, 563 [14 A.L.R. 547]; *Kentucky Distilleries & Warehouse Co.* v. *Lillard,* 160 F. 34, 40 [87 C.C.A. 190]; *Jacobson* v. *Graham Ship-By-Truck Co.* (Mo.App.), 61 S.W.2d 401, 402; *Davis* v. *Harris,* 178 N.C. 24 [100 S.E. 111, 112]; *Kaufmann* v. *Delafield,* 224 App.Div. 29 [229 N.Y.S. 545, 546]; *Shell Pipe Line Corporation* v. *Harris* (Tex.Civ.App.), 68 S.W.2d 236, 238; 15 Am.Jur. 424; 25 C.J.S. 502; 81 A.L.R. 282, 284.)

When, however, defendant company demanded a complete release from liability as a condition of its payment of the repair bill, plaintiff should have abandoned faith in its promise and paid the bill himself if he was able to do so. (*Cf. Kentucky Distilleries & Warehouse Co.* v. *Lillard, supra; Osterhoudt* v. *Hedger Transportation Co. Inc., supra; Jacobson* v. *Graham Ship-By-Truck Co., supra.*)

■ The duty to minimize damages does not require an injured person to do what is unreasonable or impracticable, and, consequently, when expenditures are necessary for minimization of damages, the duty does not run to a person who is financially unable to make such expenditures. (*Birmingham Railway, Light & Power Co.* v. *Hatton,* 187 Ala. 573, 578 [65 So. 934]; *North American Acc. Ins. Co.* v. *Henderson,* 180 Miss. 395 [177 So. 528, 530]; *Light* v. *Detroit, etc. R. Co.,* 165 Mich. 433, 436 [130 N.W. 1124, 34 L.R.A.N.S. 282]; see *W. B. Moses & Sons* v. *Lockwood,* 295 F. 936, 941 [54 App.D.C. 115]; 15 Am.Jur. 425; 25 C.J.S. 502; 81 A.L.R. 282, 284.) ■ In the present case, the parties are in disagreement as to whether plaintiff's financial condition was such as to require that in the exercise of ordinary care he pay the repair bill following defendant company's refusal to do so. The trial court did not make an express finding regarding plaintiff's ability or inability in this regard. It did, however, in accord with the issues made by the pleadings, find "that plaintiff was by reason of the negligence . . . of defendant . . . and the wrongful failure of . . . defendant . . . to pay said repair bill deprived of the use of his truck for a period of seventeen months." A finding that plaintiff was unable to pay the repair bill results by necessary implication therefrom. (*Reiniger* v. *Hassell,* 216 Cal. 209, 211 [13 P.2d 737]; *Tuso* v. *Green,* 194 Cal. 574, 582 [229 P. 327].)

■ The essence of the rule denying recovery for losses which

could have been prevented by the reasonable efforts and expenditures of plaintiff is that his conduct rather than that of defendants proximately caused such losses.

There is ample evidence to support the implied finding that plaintiff lacked the funds and financial ability which in the exercise of ordinary care would have required him to pay the repair bill. The evidence shows that at the time of the accident plaintiff was the owner and operator of a service station costing $5,000 and against which there remained an indebtedness of $500; that he was the owner of a truck and automobile upon which two or three payments of $71.48 each were yet due; and that payments on the truck were completed a few months after the accident, while the service station indebtedness was not fully paid until just before the trial of this action on March 18, 1937. Plaintiff testified that what little capital he had after the accident was needed for the operation of his service station; that he was compelled to refinance his automobile after the accident in order to complete payments on the truck; that at the time of the accident he was also indebted to the State Finance Company in the sum of $927.45, which was paid in full by December of 1935; that his business of distributing gasoline for the Mileage Gasoline Company on a commission basis was destroyed because of his inability to make deliveries, his earnings dropping from $639.91 in September to $171.17 in October, 1935. Plaintiff further testified, ''Well, when my truck was wrecked, I couldn't make any payments on the truck. I was meeting all the obligations as far as I could. As soon as the truck was wrecked, they turned around and they tied up the truck and my car and my bank account, which left me, well, penniless.'' Defendants contend, nevertheless, that plaintiff had a credit rating of $600 with the Mileage Gasoline Company for payment on the truck and trailer and that, therefore, he could have raised the money for the payment of the repair bill. The contract with the Mileage Gasoline Company was terminated and plaintiff's account was closed on October 12, 1935, ten days before the repairs to the truck were completed. Although the credit was not expressly revoked or withdrawn, it would seem obvious that it was cancelled when the contract was terminated and the account closed. From the foregoing evidence the court was justified in concluding that plaintiff's financial condition was such that he could not reason-

ably be required to pay the repair bill in order to minimize the damages.

It also appears from a finding of the trial court, which is amply supported by the evidence, that plaintiff attempted and was unable to obtain the use of a substitute truck while his truck was being repaired. ■ Certainly he was not required to yield to defendant company's demand that he release it from all liability in order to minimize the damages resulting from its tortious act. Thus, it cannot be said that plaintiff did not act with the care and diligence to be expected of the ordinarily prudent man under similar circumstances.

■ Defendants finally contend that the trial court erred in permitting plaintiff to amend his complaint after the case was submitted, and in refusing to set aside the submission in order to permit them to plead to the amended complaint and offer further evidence on the issues tendered thereby. They argue that the amendment changed the cause of action from one of tort to one of breach of contract, that the alleged contract to repair the truck set forth in the amendment was entered into without authority of defendant company, and that the cause of action based upon breach of contract was barred by the statute of limitations. The original complaint which set forth a cause of action based upon defendants' negligence alleged that defendant company agreed to repair the truck at its expense. In their answers, defendants denied that they were negligent or that defendant company agreed to repair the truck. The amendment to the complaint realleged defendants' negligence and, in conformity with the proof, set forth with greater particularity the company's agreement to repair the truck. The amendment did not change the cause of action, and it was authorized by section 470 of the Code of Civil Procedure. (*Andrus* v. *Smith*, 133 Cal. 78, 81 [65 P. 320]; *Burrows* v. *Burrows*, 18 Cal.App.2d 275, 278 [63 P. 2d 1135].) The trial court therefore did not err in permitting plaintiff to amend his complaint to conform to the proof. ■ Nor did it err in refusing to set aside submission of the case to allow defendants to plead to the amended complaint and offer additional evidence. When an amendment to a complaint is properly filed to conform to proof, the issues tendered thereby are deemed denied without pleading since they already have been tried. (*Glougie* v. *Glougie*, 174

Cal. 126, 132 [162 P. 118]; *McDougald* v. *Argonaut ·Land etc. Co.*, 117 Cal. 87, 95 [48 P. 1021].) The issues presented by the amended complaint were raised by the pleadings prior to the amendment, and defendants had ample opportunity to, and did, offer evidence thereon during the course of the trial.

The judgment is affirmed.

Shenk, J., Curtis, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., pro tem., concurred.