**AIRBORNE, INC., a Colorado corporation, Plaintiff–Appellee and Cross–Appellant,**

v.

**DENVER AIR CENTER, INC., a Colorado corporation, Defendant–Appellant and Cross–Appellee.**

**No. 90CA2218.**

Colorado Court of Appeals,
Div. V.

April 23, 1992.

As Modified on Denial of Rehearing
May 28, 1992.

Fairfield and Woods, P.C., Brent T. Johnson, Denver, for plaintiff-appellee and cross-appellant.

Tilly & Graves, P.C., Donald Lawrence, Jr., Denver, for defendant-appellant and cross-appellee.

Opinion by Judge DAVIDSON.

In an action to recover damages for breach of contract and negligence, defendant, Denver Air Center, Inc., (Denver Air) appeals from a judgment entered after a bench trial in favor of plaintiff, Airborne, Inc. Airborne cross-appeals, asserting error in the calculation of damages and asking this court to amend the judgment to include damages incurred during the pendency of this appeal. We affirm in part and reverse in part.

Airborne is in the business of transporting parachutists to jump sites. Airborne purchased a twin-engine Beechcraft Bonanza and, in July 1986, began using the aircraft in its business. In June 1988, Airborne experienced problems with the right engine. It contracted with an out-of-state company to repair the engine and hired Denver Air to remove the engine for shipping and to reinstall the engine after repair. This work was completed in October 1988.

Thereafter, during takeoff with ten sky divers aboard, the right engine faltered and caught on fire. The pilot landed safely by giving full power to the left engine and by shutting down the right engine, but as a result both engines sustained damage. Airborne, unwilling to let Denver Air work on the plane again, asked Denver Air to pay for necessary repairs. Denver Air refused.

In November 1989, Airborne filed suit against Denver Air claiming negligence and breach of warranty for the work performed on the plane prior to the incident. Airborne sought damages for costs of repair, diminution in market value, and loss of use of the airplane as a result of the incident.

Because Denver Air stipulated just prior to trial that the engine fire resulted from the improper installation of exhaust stacks by its employees, the trial proceeded only to determine damages. After a bench trial, the court found that Airborne had not failed to mitigate its damages and entered judgment in favor of Airborne for approximately $80,000 for loss of use, $38,000 for repairs, and $25,000 for diminution in value.

I.

Denver Air's first contention of error pertains to damages flowing from the loss of use of the aircraft. Since certain contentions of Airborne in its cross-appeal also concern that issue, we address them together.

A.

The trial court found that Airborne should be awarded damages flowing from

the loss of use of its airplane for 27 months. Both Denver Air and Airborne challenge this determination. Denver Air contends that the trial court erred in awarding 27 months of loss of use rather than only three months. On cross-appeal, Airborne contends that it is entitled to loss of use not only for the 27 months given by the trial court, but also for its loss of use of the aircraft during the pendency of this appeal. We conclude that Airborne is entitled only to damages flowing from loss of use of the aircraft for three months.

■■■ An owner may recover for the loss of use of personal property for the length of time reasonably required for repair. C. McCormick, *Damages* § 124 (1935); *Urico v. Parnell Oil Co.*, 708 F.2d 852 (1983); *Lamb v. R.L. Mathis Certified Dairy Co.*, 183 Ga.App. 455, 359 S.E.2d 214 (1987); *Karlin v. Inland Steel Co.*, 77 Ill. App.3d 183, 32 Ill.Dec. 657, 395 N.E.2d 1038 (1979); *Long v. McAllister*, 319 N.W.2d 256 (Iowa 1982); *McPherson v. Kerr*, 195 Mont. 454, 636 P.2d 852 (1981); *CJI–Civ.2d* 6:13 (1988); *see Hunter v. Quaintance*, 69 Colo. 28, 168 P. 918 (1917) (plaintiff could not in any event recover for loss of use damages unless he showed whether length of time the vehicle was out of use was necessary and whether repairs were made with reasonable promptness); *see also Cope v. Vermeer Sales & Service*, 650 P.2d 1307 (Colo.App.1982). If the owner proves what length of time is reasonable for repair, he need not actually have his property repaired in order to recover loss of use damages. *Cf. Francis v. Steve Johnson Pontiac–GMC–Jeep, Inc.*, 724 P.2d 84 (Colo.App.1986) (plaintiff entitled to reasonable rental value, even though no replacement vehicle was actually rented); *Meakin v. Dreier*, 209 So.2d 252 (Fla.Dist. Ct.App.1968) ("loss of use of a pleasure vehicle during the time reasonably necessary to make the repairs, though no substitute vehicle is leased, is properly an element of damages").

■■ Here, the trial court, with record support, determined that repairs would require three months. That determination is not disputed by either party.

However, the trial court also allowed damages for the 24 months that the plane sat idle prior to trial. Denver Air contends that it was error to do so since an owner can recover for loss of use only for the time reasonably necessary to accomplish repairs—in this case, three months. Airborne argues, however, that because it was financially unable to have the plane repaired, the award of damages for this additional period was proper. Further, Airborne argues that the period should be extended to include the entire time it has been deprived of use of the plane during this appeal. We agree with Denver Air.

In a very few limited circumstances, courts have ruled that financial inability to pay, *in combination with other factors*, has been one relevant factor in determining the reasonableness of the length of time necessary for repair. *See Urico v. Parnell Oil Co.*, *supra* (relevant where arbitrary conduct of insurer wrongfully delayed or interfered with repairs which were begun); *see also Valencia v. Shell Oil Co.*, 23 Cal.2d 840, 147 P.2d 558 (1944) (defendant promised but failed to pay for repairs and plaintiff was financially unable to do so).

Other courts have refused to consider financial inability to pay. *See Prothro v. Dillahunty*, 488 So.2d 1163 (La.Ct.App. 1986) (the fact that finances are not available to replace destroyed property cannot be used to extend the time for recovery of damages for loss of use).

Under the circumstances presented here, we conclude as a matter of law that no extension of time was warranted. Although Denver Air refused to pay for repairs on the aircraft and Airborne claimed it lacked funds to make the repairs, Airborne presented no evidence that Denver Air "wrongfully prolonged" any repair process. Contrary to Airborne's assertion, Denver Air's refusal to admit liability and pay for repairs does not in itself constitute a "wrongful delay or interference with the repair process." *Cf. Urico v. Parnell Oil Co.*, *supra* (although liability was uncontested and insurer had agreed to pay for repairs, insurer then refused to make pay-

ments unless plaintiff waived all other claims).

Thus, we conclude as a matter of law that no extension of time was warranted and that Airborne's damages for loss of use are limited to the three-month period which the trial court found was reasonably necessary to complete repair.

### B.

On cross-appeal, Airborne further contends that the trial court erred in calculating the damages for loss of profits. We agree.

Here, damages for loss of use was measured by the loss of net profits, meaning net earnings, or the excess of returns over expenditures. *Lee v. Durango Music*, 144 Colo. 270, 355 P.2d 1083 (1960). The ledger sheets from which the court calculated lost profits had entries over a 20–month period from May 1986 through December 1987. However, the president of Airborne testified that the Beechcraft was not used in the business until July 1986 and the ledger entries correspondingly showed revenues only for 18 months from July 1986 until December 1987.

Total revenues shown by the ledger entries were $58,210. The trial court made an error in calculation and divided by 19 months rather than 18 months. The court obtained a gross profit of $3,064 and then subtracted operational expenses to obtain a monthly net profit of $2,964. If divided by 18 months, the corrected monthly net profit is $3,134. Thus, damages for Airborne's three months loss of use total $9,402.

### C.

Denver Air also contends that the trial court erred by admitting the exhibit on which the award for lost profits was based in violation of CRE 1006 and 1002. We disagree.

■ An award of damages cannot be based on speculation or conjecture. *Lee v. Durango Music, supra.* However, when recovery of lost net earnings is sought, it is sufficient for the plaintiff to provide a reasonable basis for computation, using the best evidence obtainable under the circumstances which will enable the trier of fact to arrive at a fairly approximate estimate of the loss. *Tull v. Gundersons, Inc.*, 709 P.2d 940 (Colo.1985). Evidence of past performance will form the basis for a reasonable prediction of future profits. *Tull v. Gundersons, Inc., supra.*

■ CRE 1006 provides that the contents of voluminous writings which cannot conveniently be examined in court may be presented in the form of a testimonial or written summary. The rule requires the proponent of summary evidence to establish that the underlying materials upon which the summary is based would be admissible in evidence and that they were made available to the opposing party for inspection. *Metro National Bank v. Parker*, 773 P.2d 633 (Colo.App.1989).

■ Evidence admissible under CRE 1006 is not objectionable on the ground that it violates CRE 1002, the "best evidence rule." If proper foundation has been established, questions concerning the authenticity of the evidence or the credibility of the testimony go to the weight of the evidence, not its admissibility. *Metro National Bank v. Parker, supra.*

■ Here, based on his review of receipts and cash disbursement sheets, Airborne's president testified as to the gross revenues earned per month from the use of the aircraft as well as monthly expenditures made on this airplane. In addition, he submitted a written ledger summary of revenue generated by the aircraft over an 18–month period, compiled, *inter alia*, from entries in a cash receipt journal. These records were compiled in the normal course of business before the injury occurred. Based on uncontroverted testimony, the trial court found that the underlying source documents had been produced to defendants, and admitted the summary.

We conclude that the proper foundation was established under CRE 1006 and that the ledger summary and the president's testimony were admissible, competent evidence to prove the amount of net profits lost.

## II.

Denver Air next contends that the trial court erred by awarding $38,000 for repairs. We disagree.

■ Compensatory damages for personal property which has been damaged but not destroyed include the reasonable costs of repair. C. McCormick, *Damages* § 124 (1935); *Keefe v. Bekins Van & Storage Co.*, 36 Colo.App. 382, 540 P.2d 1132 (1975) (personal property damaged while with bailee); *CJI–Civ.2d* 6:12 (1988); *cf. McAlonan v. U.S. Home Corp.*, 724 P.2d 78 (Colo.App.1986) (condominium); *Holland v. Green Mountain Swim Club, Inc.*, 470 P.2d 61 (Colo.1970) (not selected for official publication) (swimming pool). The purpose behind such damages is to make the injured party whole by compensating the plaintiff for actual losses suffered. *Board of County Commissioners v. Slovek*, 723 P.2d 1309 (Colo.1986); *see McPherson v. Kerr, supra* (compensatory damages are designed to compensate the injured party for actual loss—no more, no less). The court, as trier of fact, is clothed with a wide discretion in the matter of fixing the amount of damages. *Bigler v. Richards*, 151 Colo. 325, 377 P.2d 552 (1963).

■ Here, an aircraft mechanic inspected the plane two days after the incident and estimated that repairs at that time would cost $27,000. The same mechanic reinspected the aircraft just prior to trial and then testified that a more accurate estimate was $38,000. The revised estimate reflected increases in hourly rates for labor and costs of parts over the 24 months following the incident and a recalculation of the amount of work which was required. Denver Air did not present any evidence to controvert this testimony, but argues that it was error to measure the costs of repair at the time of trial rather than at the time of the incident.

At the time of trial the aircraft had not yet been repaired. Thus, the trial court found that an award of $27,000 would have been inadequate to cover costs of repair because it would not have made the plaintiff whole. We agree that the goal of compensatory damages is to make the plaintiff whole and we conclude it was not error for the trial court to award $38,000 which was the actual cost of repair. Such an award in no way constituted a windfall to plaintiff. *See* C. McCormick, *Damages* § 124 (1935) (plaintiff may recover the reasonable amount expended, or necessary "to be expended" for repairing the injury); *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433 (9th Cir.1984) (award of $36,000 in damages based on evidence presented at trial not erroneous, even though estimates at the time of collision and eighteen months later were $6800 and $22,000, respectively).

Denver Air also argues that it was an abuse of discretion for the trial court to award the higher cost of repair occasioned by Airborne's failure to promptly effect repairs. We disagree.

■ Denver Air correctly recites the rule that loss of use damages, by restricting the period of recovery, generally precludes a plaintiff from extending the period for which it may collect loss of use damages by postponing the repair process. *See Urico v. Parnell Oil Co., supra* (an award of loss of use damages beyond the repair period is potentially boundless; anticipation of such an award could conceivably reduce any incentive that a plaintiff might have to mitigate losses).

■ However, the rule with respect to an award of damages for repair is different from damages for loss of use. First, although plaintiff has a duty to mitigate damages, such duty does not necessarily require that the plaintiff repair the injury. *See Holland v. Green Mountain Swim Club, Inc., supra* (plaintiff is only required to take reasonable measures to mitigate damages). Further, unlike loss of use damages, for which the trial court's role, as trier of fact, is to determine the reasonable period of repair, the trial court has wide discretion regarding the measure and amount of general damages, as long as the award does not create a windfall to plaintiff, *see McPherson v. Kerr, supra*, or result in double recovery.

Here, the trial court determined that Airborne had not failed to mitigate its damages by waiting to repair the plane, and the court awarded $38,000 which was the amount necessary to repair the plane and to make Airborne whole. This amount is not a windfall, whether or not Airborne actually has the plane repaired, since it will either pay out this amount to have the plane repaired, or retain or sell at a discount the aircraft in its devalued condition. Nor did it result in double recovery. Thus, we conclude that the trial court did not abuse its discretion in awarding $38,000, the actual cost of repairs.

Finally, contrary to Denver Air's contention, the trial court was not bound by the estimates of damages recited in the expert's earlier report, in his answers to interrogatories, or in Airborne's trial data certificate.

Here, Airborne's complaint asked for damages "in an amount to be proved at trial." Airborne's trial data certificate stated that: "Plaintiff claims damages in an amount to be proven at trial," with $27,000 as the "estimated Cost of Repair." Similarly, Airborne stated in its interrogatory: "Estimated Cost of Repairs—$26,970." Because Airborne made clear that it would seek whatever damages were appropriate based on the evidence at trial, we perceive no error. *Cf. Worthen Bank & Trust Co. v. Silvercool Service Co.*, 687 P.2d 464 (Colo.App.1984) (final judgment should be in the amount to which plaintiff is entitled and is not limited to amount specified in complaint); *DeCicco v. Trinidad Area Health Ass'n*, 40 Colo.App. 63, 573 P.2d 559 (1977) (if damages can only be estimated at pleading state, recovery is not to be limited to amount listed in the complaint).

### III.

### A.

Denver Air further contends that the trial court erred in awarding diminution in market value in addition to repair costs. Specifically, it argues that because repair of the engines will restore the aircraft to its pre-incident condition, the award of diminution in value is improper. We disagree.

Plaintiff is entitled to such damages as are necessary to make it whole. *McAlonan v. U.S. Home Corp.*, *supra*. In addition to the reasonable costs of repairing the property, the plaintiff is entitled to the decrease in market value to the property as repaired. C. McCormick, *Damages* § 124 (1935); *Long v. McAllister*, *supra; see Trujillo v. Wilson*, 117 Colo. 430, 189 P.2d 147 (1948) (damages for both repairs and diminution in value allowed for car which was "substantially destroyed" but which was converted to another use); *CJI–Civ.2d* 6:12 (1988).

Here, Airborne presented expert testimony by an aircraft dealer as to the diminished value of the plane as a result of the engine fire. He testified that under FAA and National Transportation Safety Board regulations, after the plane is repaired and recertified, an accident repair report must be filed with the FAA and a corresponding entry must be made in the aircraft's log book. It was his testimony that because prospective purchasers are particularly reluctant to purchase planes with a history of in-flight fire, the plane will never have the value that it had before the incident.

Based on this testimony the trial court determined that the aircraft, as repaired, would have a reduced market value. *See Young v. Burke*, 139 Colo. 305, 338 P.2d 284 (1959) (weight to be accorded expert testimony is within discretion of the trier of fact). Thus, we conclude that it was not error for the trial court to award diminution in value in addition to costs of repair.

### B.

However, we agree with Denver Air's contention that it was error for the trial court to award diminution in value based on market prices on the date of the trial rather than at the time of the incident.

If damaged property is repairable, the plaintiff is entitled to the reasonable costs of repair together with the de-

crease in market value to the property as repaired. C. McCormick, *Damages* § 124 (1935); *see Long v. McAllister, supra.* Decrease in market value is measured at the time of the occurrence. *See* C. McCormick, *Damages* § 124 (1935); *Trujillo v. Wilson, supra; CJI–Civ.2d* 6:11 (1988); *see also Stevens v. F/V Bonnie Doon, supra* (to the extent possible, diminution in value should be determined as of the moment of injury so as to keep the influence of market fluctuations and price changes to a minimum).

Here, the record reveals that soon after the incident, an aircraft dealer estimated that the plane's value had diminished by $15,000 to $18,000. However, at trial, he testified that "the diminution in value based on today's actual market value of these airplanes, in my opinion, now would be $25,000." Thus, the trial court awarded Airborne $25,000 for diminution in value.

Because the $25,000 was based on market prices at the time of trial, we conclude that this was error.

### IV.

Airborne finally contends on cross-appeal that the trial court erred with regard to the award of damages for repairs to the left engine. We agree in part.

The trial court heard testimony from Airborne's experts as to possible damage sustained by the left engine when the right engine caught fire and was shut down. Based on this evidence, the court awarded $7030 for the removal of the left engine, its teardown by the manufacturer to determine if an overhaul was necessary, and its reinstallation, but it did not include $900 to ship the engine to the manufacturer. Because it is not clear whether this was an oversight, we also remand this matter for the trial court's consideration.

However, we disagree with Airborne's assertion that the trial court erred by not allowing testimony of, and by not awarding damages for, costs for overhaul of the left engine.

In its final order, the trial court concluded that "the testimony supporting [the] possibility of overhaul was too speculative at trial to permit a cost estimate of the overhaul and parts." Therefore, the court did not allow either of Airborne's experts to testify as to costs related to overhaul.

Because the trial court has broad discretion in determining whether an expert's testimony is admissible, *Gold Rush Investments, Inc. v. G.E. Johnson Construction Co.,* 807 P.2d 1169 (Colo.App.1990), as well as in determining the amount of damages, *see Bigler v. Richards, supra,* we will not disturb the court's ruling on these matters.

That portion of the judgment with respect to the trial court's award of damages for repair is affirmed. That portion of the judgment with respect to the court's award of damages for diminution in value and loss of use is reversed. The cause is remanded to the trial court to determine, in a hearing if necessary, the diminution of value at the time of the incident and whether $900 for shipping is to be awarded, and to enter judgment for the amounts determined, for $9,402 in lost profits, and for prejudgment interest, as appropriate, and postjudgment interest.

PLANK and ROTHENBERG, JJ., concur.