**UILI FUIA, Plaintiff**

**v.**

**TUMANU TUA, SAWYER SIFOA CO., and INSURANCE COMPANY OF THE PACIFIC, Defendants**

High Court of American Samoa
Trial Division

CA No. 17-91

December 18, 1992

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, AFUOLA, Associate Judge.

Counsel: For Plaintiff, Robert A. Dennison III
For Defendants, Roy J.D. Hall, Jr.

This is an action in tort for property damage resulting from a motor-vehicle accident. Trial took place on September 30, 1992.

## FINDINGS OF FACT

This accident involved the collision of a commercial aiga, or "family," bus and a flatbed truck at about 10:30 a.m. on January 8, 1991. This accident occurred in the westbound lane of the main public road immediately adjacent to the JGL Lumber and Hardware ("JGL") store in Nu'uuli, American Samoa.

At the time of the accident, the bus was being driven by Uili Collins ("Collins") without the knowledge of the bus' owner, Uili Fuia ("Fuia"). Fa'aea Tapu ("Tapu"), the regular driver of this bus, had gone fishing the night before and allowed Collins to operate the bus in his place. The truck was owned by defendant Sawyer Sifoa Co. ("Sawyer Sifoa") and was operated by defendant Tumanu Tua ("Tua"), Sawyer Sifoa's employee.

At the time of the accident, Sawyer Sifoa carried the truck's liability insurance with defendant Insurance Company of the Pacific ("INSPAC"). The policy provided a property damage limit of $5,000 for each accident, with an excess liability endorsement up to an additional $100,000. This endorsement is subject, however, to all conditions of the underlying policy, which does not appear to have been submitted as a complete document at the trial.

### 1. *The Accident*

Seeking items to purchase for Sawyer Sifoa, Tua was operating the truck within the course and scope of his employment. In order to buy some lumber, he had parked the unloaded truck on the concrete parking area in front of and facing the JGL store. The concrete parking area slopes downward from the store to the road. Tua testified that he put the truck's standard transmission into second gear and engaged the parking brake.

As Tua entered the store, the bus started to move backwards, slowly gaining speed, towards the main road. Trying to regain control

71

and stop the truck before it reached the main road, Tua rushed to the truck cab and tried to both start the engine and apply the brake. Nevertheless, the end of the flatbed struck the bus near the right-side door. The collision occurred approximately in the middle of the westbound lane of the road.

Clearly, Tua had failed to fully engage the truck's transmission gear when he parked on the inclined parking area, and the transmission slipped into neutral as he entered the JGL store. Because the hand brake was not engaged or was overcome by the truck's weight, the truck rolled backwards and into the oncoming bus. Since traffic on the main road was foreseeable, ordinary or reasonable care towards persons in or owning those vehicles required that the truck be properly parked. Thus, the collision was a natural and uninterrupted consequence of his failure to exercise proper care. Since Tua was acting in the course and scope of his employment, his negligence is imputed to Sawyer Sifoa.

As for the bus, Tua's observations were fleeting at best. Apparently, he saw the bus traveling westbound, when it was still some distance away, but thought it was moving fast enough to get out of the truck's way. Although several bus passengers and others probably observed the collision, we heard from only two other purported percipient witnesses.

Tapu, the regular driver, stated that he was seated in the left-rear corner of the bus. He testified that the bus was moving at about 20 miles per hour as it approached the JGL store area and that the driver continued straight into the truck's path without looking at the truck or taking any evasive action. Since he turned over the bus to Collins several miles away at Fagatogo and after a night of fishing, we harbor doubts about his actual presence on the bus. However, his testimony was at least consistent with Tua's observation on the lack of any attempts to elude the truck.

Duke Vienna was also just inside one of the front doors of the JGL store when the truck began to roll backwards. He saw the bus moving slowly into the area and thought that the bus could have been stopped in time. Instead, the driver accelerated in an unsuccessful attempt to avoid the accident.

Collins either was inattentive, if not oblivious, to the predicament of the truck or possessed poor judgment in accelerating to attempt to avoid the collision. A combination of both factors was

probably involved in his failure to use ordinary or reasonable care. Because he was neither aware of nor properly reacted to the surrounding circumstances, the collision was also a natural and uninterrupted result of his careless driving.

Considering all the surrounding circumstances, the proportionate shares of the negligence attributable to Tua and Collins are determined to be 60% and 40%, respectively.

## 2. Damages

The measure of damages to personal property injured but not wholly destroyed is: (a) either: (1) the difference between the value of the property immediately before and after the injury, or (2) at the owner's option when the property is economically repairable, the reasonable cost of repair, with due allowance for any difference between the original value and the value after repairs; and (b) loss of use. Restatement (Second) of Torts § 928 (1979). Fuia has elected to recover the reasonable cost of repair, without any claim of residual depreciation after repair, and defendants have not contended that this measure be adjusted because the cost of repair exceeded the decline in value caused by the accident.

The back of the flatbed truck struck the right side of the bus at or next to the rear side of the door, piercing the bus just above the passengers' floor. Several witnesses, including Tapu (who may not have seen the damaged bus until later), INSPAC's inspector, and Fuia and his principal repairman, testified in some detail to the extent of the bus' damage. While the testimony differed, we are persuaded that in addition to the right siding and door, several side posts and passenger seats, the floor, and the roof sustained damage. Most importantly, one main beam was fractured. The repair estimate for materials, parts and labor, excluding painting, was $5,839.85. The actual cost, including painting, was $6,178.24. When considered in the light of the descriptions by Fuia and his repairman of the work done, it is apparent that the bus was substantially reconstructed. We are not satisfied that all of this work was necessary. Hence, although no evidence precisely identified nonessential repairs, we find that $4,633.68, the actual cost reduced by 25%, was the reasonable cost of repairing the damage to the bus resulting from the accident.

Loss of use is based on the value of that use or the amount paid for a substitute during the period when the owner is prevented from using

73

the injured personal property. Restatement (Second) of Torts § 931 (1979). This time period is generally defined as the time reasonably required for repairing the property. *Valencia v. Shell Oil Co.*, 147 P.2d 558, 560 (Cal. 1944). However, the owner's duty to mitigate damages by undertaking repairs with due diligence may be moderated, and the period may be extended, if delays are encountered because necessary acts are unreasonable or impracticable. *Id.* at 561. In *Valencia*, the plaintiff owner lacked the financial ability to pay, and the defendant tortfeasor refused to pay, a repair bill for a truck used in the plaintiff's business.

Repair of the bus actually began in early April 1992, and the bus was back in operation on June 18, 1992. The repairman testified that a reasonable time frame for the work done was approximately two months. Fuia contended that the delay in starting the repair resulted from his lack of sufficient funds to purchase all the materials and parts needed. He cited contemporaneous construction of an addition to his house, which competed with the repair work for funds and required piecemeal purchase of repair items for the bus.

Although we have found that more work was done on the bus than was necessary to repair the accident damage, we are satisfied that 60 days was a reasonable period for the repairs actually required. We do not, however, find that the delay from January to April 1991 in commencing the repair was due to Fuia's inability to pay for the repair materials, parts and labor. Fuia was, and still is, employed as an accountant. He should and could have found the means to more promptly begin and complete the repair.

Both Fuia and Tapu testified that the daily, average gross income from the commercial operation of the bus, Monday through Saturday of each week, was $100. Clearly, the gross earnings varied almost every day, and Tapu also testified to variable averages for each weekly operational day. This testimony showed a lesser daily average closer to $87 per day. However, for purposes of assigning a value to Fuia's loss of use of the bus, we find that $100 per operational day is a reasonable average. Gross bus earnings were divided between the owner and driver, the owner receiving 65 cents of every $1. The driver paid for gas out of his 35-cent share. Beginning on January 10, 1991, the day the repair estimate was given, and ending on March 10, 1991, there were 51 actual bus-operation days during this 60-day period. Thus, the reasonable value of Fuia's loss of use was 65% of estimated gross revenues of $5,100, or $3,315.

74

Adding the reasonable cost of repair, $4,633.68, and the reasonable value of the loss of use, $3,315.00, we find that Fuia's total damages were $7,948.68. Apportioning this sum according to the degree of fault found to be attributable to Tua (60%) and Collins (40%), we find that Fuia's recoverable damages are $4,769.21.

## CONCLUSIONS OF LAW

1. Tua negligently parked the truck on the occasion of this accident, and his negligence was a proximate cause of the damage to Fuia's bus.

2. At the time of the accident, Tua was acting in the course and scope of his employment by Sawyer Sifoa, the owner of the truck. Tua's negligence is properly imputed to Sawyer Sifoa to the full extent of his liability to Fuia, as the owner of the bus.

3. Collins negligently operated the bus, and his negligence was the other proximate cause of the damage.

4. Comparing the negligent conduct by Tua and Collins, assessment of responsibility at 60% for Tua and 40% for Collins is reasonable.

5. Fuia, as the owner of the bus, suffered damages in the amounts of $4,633.68 for the reasonable cost of repairing of the bus and $3,315.00 for the reasonable value of the lost use of the bus, for a total of $7,948.68.

6. Apportioning the damages on a 60%-40% basis between Tua and Collins, respectively, Tua and Sawyer Sifoa are jointly and severally liable to Fuia in the sum of $4,769.21.

7. Under the terms of the motor vehicle liability insurance policy issued to Sawyer Sifoa, INSPAC has the ultimate contractual responsibility for payment of Fuia's property damages in the sum of $4,769.21.

Judgment shall enter accordingly. It is so ordered.