[Civ. No. 28361. First Dist., Div. Four. July 29, 1971.]

WILLIAM SKERLEC, JR., et al., Plaintiffs and Appellants, v. WELLS FARGO BANK, Defendant and Respondent.

1004

**COUNSEL**

Albert F. Cunningham for Plaintiffs and Appellants.

Wines, Coffee & Robinson and Allan C. Anderson for Defendant and Respondent.

**OPINION**

**DEVINE, P. J.**—Plaintiffs appeal from judgment of dismissal following the sustaining of a demurrer to their complaint without leave to amend. Plaintiffs allege that they were injured in a vehicle by the negligence of Nancy Lee Bourguignon, driver of another vehicle. The only defendant present in this appeal is respondent Wells Fargo Bank, National Association, which as lender financed the sale to Nancy Lee Bourguignon by an automobile dealer of the vehicle which she was driving. The action is on two theories—vicarious liability of the lender and negligent entrustment. The two theories somewhat overlap, but may be discussed separately.

### Theory of Lender's Liability

Appellants' proposition is that respondent bank assumed a business relationship with an automobile dealer (also a defendant, but not an appellant) whereby, through making individual loans for purchase of vehicles, the bank places automobiles in the hands of persons regardless of their ability to respond in damages "as required by the California Financial Responsibility Law (section 16000 et seq. of the California Vehicle Code)"; that the bank did finance the purchase of the Bourguignon vehicle and that the bank knew that Nancy Lee Bourguignon "was financially incapable of complying with the financial responsibility laws." Appellants do not rely on any statute directly compelling the vehicle owner to carry public liability insurance or, what would be farther removed, compelling the lender to see to it that the borrowing purchaser has such insurance, because there is no such statute in this state. They contend, however, that there is a common law liability of a lender who knows that the borrower is unable to comply with section 16000 et seq. of the Vehicle Code.

In considering appellants' proffered amalgam of common with statutory law, we take note first of the common law aspect. Appellants cite *Connor v. Great Western Sav. & Loan Assn.*, 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609]. In that case, a financial institution was held potentially re-

sponsible (judgment of nonsuit was reversed) for damages to buyers of homes in a subdivision where the lender "became much more than a lender content to lend money at interest on the security of real property" (p. 864), having conditioned its funding on minimum prior commitments to buy homes; having warehoused the land for the developer; having channeled buyers to the developer, charging a fee; having had reason to know that the developer was thinly capitalized and relatively inexperienced so that corner-cutting was a foreseeable risk; having controlled the course that the development would take. This conduct was far beyond that alleged in the present case, and this is but natural because of the difference between a firmly located construction project and a highly mobile vehicle which passes at once from the control of the dealer and of the lender to whatever extent the latter may have had control. The *Connor* decision applied the six tests which were laid down in *Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P. 2d 16, 65 A.L.R.2d 1358], and found that the acts of the lending institution met these criteria of liability.  ■  A brief review shows that but one of these is met by plaintiffs' allegations which, because of the demurrer, are presently accepted, namely, that plaintiffs were injured. Plaintiffs' allegations fail the first test, that of intention that the act affect plaintiffs, because any one or more of untold millions may be affected by the driving of an automobile whether the driver be insured or not; of foreseeability of harm to plaintiffs for the same reason; of closeness of defendants' conduct to the injury because of the obvious remoteness of what happened on the highway from the business transaction at the lender's desk; and of moral blame, because the defendant violated no law (as defendant notary did by practicing law in the *Biakanja* case) and engaged in no act which created an unreasonable risk of harm to plaintiffs (see *Connor,* p. 865). Plaintiffs point out that the bank took care to protect itself not only by requiring collision insurance but also by lending the premium money. But this act did not create a duty on the bank's part to insist on the carrying of public liability or property damage insurance. A driver who does not borrow is entitled to have collision insurance without providing insurance against his liability to others.

Subsequent to the *Connor* decision, it was held that by acting merely as a lender, a financial institution is not liable for damages caused by defective construction even though the lender approved construction plans and periodically inspected the construction. (*Bradler* v. *Craig,* 274 Cal. App.2d 466 [79 Cal.Rptr. 401].) Also, the Legislature enacted section 3434 of the Civil Code immunizing lenders from damages arising from defects in property unless the loss results from an act of the lender outside the scope of activities of a lender or unless the lender has been a party to

misrepresentations about the property. ▉ The common law liability recognized in *Connor* does not in itself extend to the case before us.

▉ Nor is this case one in which a statute supersedes a common law rule of non-liability, as in *Vesely* v. *Sager,* 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], wherein Business and Professions Code section 25602, forbidding sale of intoxicating liquor to any habitual drunkard or to an obviously intoxicated person, was held to create potential liability of a tavern keeper (assuming proximate cause) for plaintiff's injuries caused by a drunken driver. In our case, not only is there no statute requiring an owner to carry liability insurance (except a transporter of vehicles [Veh. Code, § 16550] and operators of driving schools [Veh. Code, § 11103]), but also the absence of such a statute follows lengthy and repeated deliberations by the Legislature. (As late as 1969, Assembly Bill 1425, which would have requested insurance as a condition of registration, died in committee.)[1]

Appellants' reliance on the Financial Responsibility Act is misplaced, because that act requires insurance (or surety bond or deposit with the State Controller or certificate by a self-insured employer) only when the driver has been held to an unsatisfied judgment resulting from operation of a vehicle on a highway, which is not the case here. But this act does not refer to responsibility of lenders. It would be incongruous to say the least if the lender would be bound to see that the buyer have insurance (or surety bond), because the buyer himself or a non-borrowing buyer would not be so bound. (See *Billington* v. *Interinsurance Exchange,* 71 Cal.2d 728, 741 [79 Cal.Rptr. 326, 456 P.2d 982].)

But the Legislature has not only abstained from requiring that lending institutions demand from borrowers that they purchase insurance for third-party protection; it has affirmatively recognized that the lenders, by complying with statutory procedure, may legally omit provision for such insurance. Section 5604 of the Vehicle Code provides that a dealer or lending agency which requires its obligor to insure the vehicle shall, if the policy is obtained by the dealer or agency, and the policy does not insure against liability for personal injury, death or property damage, notify the transferee or obligor in writing on a document other than the policy.

Appellants do not and cannot state a cause of action on the theory of lender's liability to demand third-party insurance.

### Theory of Negligent Entrustment

▉ Appellants' pleading is that respondent "did entrust and finance the automobile" to Nancy Bourguignon and that she was incompetent "in that

---

[1]Final Calendar of Legislative Business 1969, p. 440.

she did not have and was not going to purchase a policy of automobile liability insurance and had not, and was not going to comply with the Financial Responsibility Laws for the State of California." If we allow, because of the general demurrer, the dubious allegation of "entrustment" by the lender, we must nevertheless conclude that no cause of action has been stated. One is not incompetent to drive merely because he does not have liability insurance or because, in event a judgment later were rendered against him, he would then be unable or unwilling to give the required security and would suffer the penalty of suspension of his license. If it were so, the Department of Motor Vehicles should not issue an operator's license to such person.

In their brief appellants suggest that if amendment were allowed they could allege "with greater particularity the ultimate fact of incompetence." But since the only asserted incompetence is that of being uninsured, and appellants do not purport to inform this court about their suggested allegation particularizing their statement about incompetency, we do not find cause for reversal.

The judgment of dismissal is affirmed.

Rattigan, J., and Christian, J., concurred.