[Civ. No. 37039. First Dist., Div. One. June 10, 1976.]

DITA ALTMAN et al., Plaintiffs and Appellants, v.
MORRIS PLAN COMPANY, Defendant and Respondent.

## Counsel

Cotchett, Hutchinson & Dyer and Girard Fisher for Plaintiffs and Appellants.

Hoge, Fenton, Jones & Appel and H. R. Lloyd, Jr., for Defendant and Respondent.

## Opinion

**BRAY, J.***—Plaintiffs and appellants appeal from a judgment of dismissal of the action of the Santa Clara County Superior Court entered after an order sustaining respondent's demurrer without leave to amend.

### Issues Presented

1. Respondent is not liable to appellants for permitting Tate to drive without public liability insurance.

2. Respondent is not liable to appellants for entrusting the automobile to an incompetent driver.

3. Respondent is not strictly liable for permitting Tate to drive without public liability insurance.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

4. The amended complaint is not barred by the statute of limitations.

RECORD

Appellants Dita Altman and Eugene Altman filed an amended complaint against respondent The Morris Plan Company of California for damages.

The first cause of action in the amended complaint alleges that respondent was the legal owner of a 1966 Buick automobile and was the financing institution through which one Terrance Tate was purchasing the automobile. On July 26, 1970, as Tate was driving the automobile, he struck and injured appellant Dita Altman, a pedestrian who was crossing a street in a crosswalk.

The amended complaint further alleges that prior to the date of the accident respondent knew that the policy for liability and collision insurance carried by Tate at that time was due to expire. Respondent informed Tate that if he did not renew his insurance policy, it would obtain insurance for him and add the premium to his monthly payments. Tate failed to renew his policy and respondent obtained only collision coverage for him. Respondent permitted Tate to operate the vehicle without requiring him to obtain public liability insurance and without obtaining such insurance for him.

The amended complaint further alleges that at all relevant times respondent knew that Tate was an "assigned risk" and knew that his driving record on file with the California Department of Motor Vehicles included seven Vehicle Code violations and one accident in approximately four years including two violations for reckless driving, one for speeding and one for violating a stop sign.

The amended complaint alleges that respondent knew or should have known that Tate was likely to injure someone in the operation of the vehicle and that he was without public liability insurance to cover the prospective loss.

The second cause of action incorporates the first cause of action and alleges that appellant Eugene Altman, husband of Dita Altman, has been deprived of the services of his wife.

The court sustained respondent's demurrer to the amended complaint without leave to amend on the grounds that appellants failed to state facts sufficient to constitute a cause of action against respondent and entered judgment of dismissal.

1. ■ Respondent is not liable to appellants for permitting Tate to drive without public liability insurance.

Appellants contend that respondent, as an institutional lender, has a duty to see that purchasers of automobiles financed by it are financially responsible. They allege that respondent knew that Tate lacked the financial resources to satisfy a judgment against him and that he was without public liability insurance. Because respondent financed Tate's purchase of an automobile under such circumstances and thereby made it possible for him to own and drive a car, appellants allege that they were deprived of an opportunity to satisfy a judgment against Tate for damages arising out of the automobile accident.

The trial court in sustaining respondent's demurrer relied primarily on *Skerlec* v. *Wells Fargo Bank* (1971) 18 Cal.App.3d 1003 [96 Cal.Rptr. 434]. As in the instant case, in *Skerlec* the plaintiffs appealed from a judgment of dismissal following the sustaining of a demurrer to their complaint without leave to amend. The plaintiffs had alleged in their complaint that they were injured in an automobile accident due to the negligence of a driver, the purchase of whose vehicle had been financed by the defendant bank. Their contention was that there is a common law liability of a lender who knows that the borrower is unable to comply with the Financial Responsibility Laws (Veh. Code, § 16000 et seq.). The court concluded that the plaintiffs did not and could not state a cause of action on the theory of the lender's liability to demand third party insurance.

Appellants cite *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], which case was distinguished in *Skerlec.* In *Connor,* "a financial institution was held potentially responsible (judgment of nonsuit was reversed) for damages to buyers of homes in a subdivision where the lender 'became much more than a lender content to lend money at interest on the security of real property' (p. 864), having conditioned its funding on minimum prior commitments to buy homes; having warehoused the land for the developer; having channeled buyers to the developer, charging a fee;

having had reason to know that the developer was thinly capitalized and relatively inexperienced so that corner-cutting was a foreseeable risk; having controlled the course that the development would take." (*Skerlec v. Wells Fargo Bank, supra,* 18 Cal.App.3d 1003 at pp. 1005-1006.) The *Skerlec* court noted that the conduct in *Connor* went far beyond that alleged in the case before it and proceeded to apply the tests for determining whether, in the absence of privity of contract, a duty arises out of a voluntarily assumed relationship if public policy dictates the existence of such a duty. These tests were set forth in *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358], wherein the court stated: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (See also *Connor* v. *Great Western Sav. & Loan Assn., supra,* at p. 865.)

Applying these tests to the facts before it, the *Skerlec* court stated: "A brief review shows that but one of these is met by plaintiffs' allegations which, because of the demurrer, are presently accepted, namely, that plaintiffs were injured. Plaintiffs' allegations fail the first test, that of intention that the act affect plaintiffs, because any one or more of untold millions may be affected by the driving of an automobile whether the driver be insured or not; of foreseeability of harm to plaintiffs for the same reason; of closeness of defendants' conduct to the injury because of the obvious remoteness of what happened on the highway from the business transaction at the lender's desk; and of moral blame, because the defendant violated no law (as defendant notary did by practicing law in the *Biakanja* case) and engaged in no act which created an unreasonable risk of harm to plaintiffs (see *Connor,* p. 865)." (*Skerlec* v. *Wells Fargo Bank, supra,* 18 Cal.App.3d 1003 at p. 1006.)

The facts in the *Connor* case are readily distinguishable from those in this case, for the court there saw that Great Western "became an active participant in a home construction enterprise. It had the right to exercise extensive control of the enterprise." (*Connor* v. *Great Western Sav. & Loan Assn., supra,* 69 Cal.2d 850 at p. 864.)

Appellants argue that policy considerations support their contention that respondent owed a duty to them to require Tate to obtain public liability insurance. It is true, as appellants contend, that it is "the public policy of this state . . . to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles." (*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39 [307 P.2d 359]; see also *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 153-154 [23 Cal.Rptr. 592, 373 P.2d 640].) It is also noted that in 1974 the Legislature added section 16020 of the Vehicle Code which directs that every driver and owner of a motor vehicle must maintain one of the forms of financial responsibility described in section 16021. Appellants concede, however, that the Legislature did not require financial responsibility as a precondition to driving at the time of the accident from which this action evolved.

On the other hand, other statutes indicate that it is the policy of this state not to impose this kind of liability on lenders. By the terms of Vehicle Code section 17150, the "owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle . . ." by any person using the vehicle with the owner's permission. Vehicle Code section 17156, however, states: "If a motor vehicle is sold under a contract of conditional sale whereby the title to such motor vehicle remains in the vendor, such vendor or his assignee shall not be deemed an owner within the provisions of this chapter, but the vendee or his assignee shall be deemed the owner notwithstanding the terms of such contract, until the vendor or his assignee retake possession of the motor vehicle. A chattel mortgagee of a motor vehicle out of possession is not an owner within the provisions of this chapter." Thus, "The conditional seller of a motor vehicle, while out of possession, is not deemed the owner thereof within the provisions of the statute imposing liabiity [*sic*] on automobile owners for the negligence of persons operating their vehicles with permission." (*Bowden* v. *Bank of America* (1950) 36 Cal.2d 406, 414 [224 P.2d 713].)

Furthermore, Vehicle Code section 5604 "provides that a dealer or lending agency which requires its obligor to insure the vehicle shall, if the policy is obtained by the dealer or agency, and the policy does not insure against liability for personal injury, death or property damage, notify the transferee or obligor in writing on a document other than the policy." (*Skerlec* v. *Wells Fargo Bank, supra,* 18 Cal.App.3d 1003 at

p. 1007.) Thus, "the Legislature has not only abstained from requiring that lending institutions demand from borrowers that they purchase insurance for third-party protection; it has affirmatively recognized that the lenders, by complying with statutory procedure, may legally omit provision for such insurance." (*Id.*)

Appellants attempt to distinguish *Skerlec* from the instant case and, in fact, concede that "whether or not a driver is financially responsible has no connection with his competence as a driver and does not cause the *accident.*" They state that their argument is not that Tate's financial irresponsibility caused the accident but that Tate's financial irresponsibility caused them to be deprived of a legal remedy. Appellants cite no case which recognizes that a person's interest in having an adequate remedy for injuries which befall him is a "legally protected interest" and that one who interferes with such an interest may be held liable. (See Rest.2d Torts, § 1, com. d.)

2. ▪ Respondent is not liable to appellants because of entrusting the automobile to an incompetent driver.

Appellants also allege that respondent is liable to them because it negligently entrusted the automobile to Tate whom it knew was an incompetent driver. The amended complaint alleges that respondent knew that Tate did not have liability coverage in connection with the owning and operation of an automobile and that it knew of his driving record which included seven Vehicle Code violations and one accident in approximately four years including two violations for reckless driving, one for speeding and one for violating a stop sign.

In *Skerlec,* the appellants' pleading stated that the respondent did entrust and finance the automobile to a driver who was incompetent " 'in that she did not have and was not going to purchase a policy of automobile liability insurance and had not, and was not going to comply with the Financial Responsibility Laws for the State of California.' " (*Skerlec* v. *Wells Fargo Bank, supra,* 18 Cal.App.3d 1003 at pp. 1007-1008.) The court concluded that no cause of action had been stated for the reason that "One is not incompetent to drive merely because he does not have liability insurance or because, in event a judgment later were rendered against him, he would then be unable or unwilling to give the required security and would suffer the penalty of suspension of his license. If it were so, the Department of Motor Vehicles should not issue an operator's license to such person." (*Id.,* at p. 1008.)

Thus, whether or not appellants have stated a cause of action for negligent entrustment depends on whether or not respondent had a duty to refuse to finance Tate's purchase of the automobile because of its knowledge of his driving record. It appears that appellants would impose on lenders a duty to review an applicant's driving record and on the basis of that record determine whether the driver is a competent driver before they consent to finance the purchase. As the trial court noted in its memorandum decision that although there may be an advantage in placing this duty on lending institutions, such a decision would be judicial legislation. The Department of Motor Vehicles has the responsibility of deciding who is competent to operate an automobile, not lending institutions.

It is further noted that respondent is not considered to be the owner of the automobile within the provisions of Vehicle Code section 17150 which imposes liability on automobile owners for the negligence of persons operating their vehicles with permission. (Veh. Code, § 17156; *Bowden* v. *Bank of America, supra,* 36 Cal.2d 406 at p. 414.)

Appellants cite as authority section 390 of the Restatement Second of Torts,[1] and *Johnson* v. *Casetta* (1961) 197 Cal.App.2d 272 [17 Cal.Rptr. 81], to support their theory. In *Johnson* the plaintiffs, husband and wife, brought suit against a used car dealer and his salesman for damages for personal injuries to themselves, and for damages for the wrongful death of their minor son which resulted from an automobile accident. Medina, the driver of the automobile which collided with plaintiffs' automobile, had obtained his automobile from the defendants, a used car dealer and a salesman employed by him. The plaintiffs alleged that Medina was an unlicensed, inexperienced, and incompetent driver; that the defendants knew or should have known of these facts; and that to furnish him with an automobile under such circumstances created an unreasonable risk that his operation of the car would endanger persons using the public streets and highways of California. The court concluded that inasmuch as the plaintiffs offered to prove that the defendants had actual knowledge of Medina's inexperience and incompetency as a driver, the trial court erred in granting the defendants' motion for nonsuit.

---

[1]"One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." (Rest.2d Torts, § 390.)

The instant case may be distinguished because it was alleged only that respondent knew that Tate was incompetent because of his driving record which disclosed only various Vehicle Code violations and not that he was unlicensed. Furthermore, it appears that it would not be sound to hold a lender liable on facts such as are alleged here. By balancing the factors set forth in *Biakanja* v. *Irving, supra,* 49 Cal.2d 647 at page 650, and applied in *Connor* v. *Great Western Sav. & Loan Assn., supra,* 69 Cal.2d 850 at pages 865-867, and *Skerlec* v. *Wells Fargo Bank, supra,* 18 Cal.App.3d 1003 at page 1006, it is concluded that respondent owed no duty to appellants to refuse to finance the purchase of an automobile to Tate even though it knew he had various Vehicle Code violations on his driving record. In financing the purchase of Tate's automobile, respondent engaged in no act which created an unreasonable risk to appellants. (See *Skerlec* v. *Wells Fargo Bank, supra,* at p. 1006.) If the duty of evaluating a driver's competence is to be borne by lending institutions in connection with the financing of automobile purchases, it is the job of the Legislature and not the courts to so provide.

3. ■ Respondent is not strictly liable for permitting Tate to drive without public liability insurance.

Appellants contend that they have stated a cause of action against respondent in strict liability in tort and argue that in providing financing for the automobile and making it possible for Tate to drive when he was without public liability insurance, respondent stood in much the same position as the mass marketer of a defective product.

Appellants' contention is without merit. The rule of strict liability as stated in section 402A of the Restatement Second of Torts and adopted by our Supreme Court in *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465, 475 [85 Cal.Rptr. 629, 467 P.2d 229], states in pertinent part: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if [¶] (a) the seller is engaged in the business of selling such a product, and [¶] (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

It cannot be said that an automobile with an uninsured driver is a "product." Nor can it be said that respondent was in the business of selling such a "product" or that respondent was a "link in the chain of

getting goods from the manufacturer to the ultimate user or consumer." (*Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1026 [98 Cal.Rptr. 187, 54 A.L.R.3d 250].) The essence of the relationship between a financing institution such as respondent and a borrower such as Tate does not relate to any product but to the professional services it provides. (See *Silverhart* v. *Mount Zion Hospital, supra,* at p. 1027.)

4. ▉ The amended complaint is not barred by the statute of limitations.

Respondent contends that appellants' amended complaint is barred by the statute of limitations because appellants did not amend their original complaint to state a cause of action against respondent until long after the statute of limitations had run. Although it is not necessary to reach this issue as it has been concluded that the trial court properly sustained the demurrer on the grounds that the amended complaint fails to state facts sufficient to constitute a cause of action, the merits of this contention will be here discussed.

Appellants' original complaint was filed on July 23, 1971, a few days less than one year after the accident. That complaint named Tate and Does I through X as defendants. Respondent was served as a fictitious defendant (Code Civ. Proc., § 474) on July 20, 1973. On September 5, 1974, appellants filed their first amended complaint which is the subject of this appeal.

Respondent now contends that the amended complaint is barred by the statute of limitations. Their demurrer to the amended complaint included this ground; however, the court sustained the demurrer on other grounds. ▉ "In reviewing the validity of the court's ruling on the general demurrer we are not confined to a consideration of the sufficiency of the reasons given. It is the validity of the ruling which is reviewable and not the court's statement of reasons for its action." (*Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 598, fn. 2 [108 Cal.Rptr. 219].)

Respondent's contention is without merit.

▉ "The purpose of the fictitious name statute (Code Civ. Proc., § 474) is to enable plaintiff to commence suit in time to avoid the bar of the statute of limitations where he is ignorant of the identity of the defendant. The statute should be liberally construed to accomplish that

purpose. (*Austin* v. *Massachusetts Bonding & Insurance Co.,* 56 Cal.2d 596, 602-603 [15 Cal.Rptr. 817, 364 P.2d 681]; *Motor City Sales* v. *Superior Court,* 31 Cal.App.3d 342, 345 [107 Cal.Rptr. 380].) [¶] Under the earlier cases, where a timely filed complaint failed to state a cause of action against a defendant designated by a fictitious name, an amendment to do so after the statutory period would not relate back to the date of the filing of the original complaint. [Citations.] The current view, first enunciated in *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d 596, 600, is that the amendment will relate back to the date of filing of the original complaint if it seeks recovery on the same general set of facts as those alleged in the original complaint. The *Austin* court reasoned that a defendant sued by a fictitious name and later brought into the case by an amendment substituting his true name is considered a party from its commencement; as to a named party where an amendment is sought after the statute has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general facts; a defendant unaware of a suit against him by a fictitious name is in no worse position if, in addition to substituting his true name, the amendment makes other changes in the allegations based on the same general facts; and from the point of view of the plaintiff, he has at least as great a need for liberality in amendment as a plaintiff who knew the defendant's name throughout. Thus, under *Austin,* the test is no longer whether a new cause of action is stated but whether recovery is sought on the same general facts. [Citations.]" (*Barnes* v. *Wilson* (1974) 40 Cal.App.3d 199, 203 [114 Cal.Rptr. 839].)

The amendment will relate back even where it alleges a new theory of liability (*Garrett* v. *Crown Coach Corp.* (1968) 259 Cal.App.2d 647, 650-651 [66 Cal.Rptr. 590]) and where additional facts are stated to support that theory (*Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575 at p. 584 [86 Cal.Rptr. 465, 468 P.2d 825]).

The crucial question to be determined is whether the amendment states a cause of action based on "the same general set of facts" as alleged in the original complaint. It appears where the amendment seeks to hold the defendant responsible for the same occurrence and damage alleged in the original complaint, the amendment will be said to relate back. (See *Barnes* v. *Wilson, supra,* 40 Cal.App.3d 199 at p. 205; *Garrett* v. *Crown Coach Corp., supra,* 259 Cal.App.2d 647 at p. 651.)

In the instant case, appellants in their original complaint name as defendants, Tate and Does I through X. They allege that the true names of Does I through X are unknown to them and further allege that the fictitious defendants are in some manner negligently responsible for their losses, injuries, and damages and that they will amend their complaint to show their true names and capacities when these are ascertained as well as the manner in which each fictitious defendant is negligently responsible. The original complaint then states that on July 26, 1970, plaintiff Dita Altman was a pedestrian crossing El Camino Real in a crosswalk, when Tate, the driver of a certain Buick automobile, struck the plaintiff. The original complaint further alleges that, "As a direct and proximate result of the negligence and carelessness of defendants, and the resulting collision, . . ." plaintiffs were injured.

Thus, the amended complaint seeks to hold respondent liable for the same occurrence and damage and so relates back to the date of filing of the original complaint as it seeks recovery on the same general set of facts as those alleged in the original complaint.

Judgment affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 4, 1976.