[No. G002472. Fourth Dist., Div. Three. Sept. 30, 1986.]

JACQUELINE V. SUTAKE, Plaintiff and Appellant, v. ORANGE COUNTY FEDERAL CREDIT UNION, Defendant and Respondent.

**COUNSEL**

W. Dozorsky for Plaintiff and Appellant.

Jones, Mahoney & Brayton, Paul M. Mahoney and Richard A. Soll for Defendant and Respondent.

**OPINION**

**WALLIN, J.**—Jacqueline V. Sutake appeals from the summary judgment granted in favor of Orange County Federal Credit Union on her complaint

for personal injuries arising out of an automobile accident. The trial court held the credit union was not liable, as a matter of law, for damages caused by an uninsured motorist where it had financed the purchase of his car. The decision was correct and the judgment is affirmed.

On November 29, 1983, Sutake was injured in the City of Huntington Beach when her car was struck by a 1980 Datsun 510 owned by Lawrence W. Doyle, Sr., (hereafter Doyle) and driven by Lawrence W. Doyle, Jr. Neither Doyle was covered by public liability insurance at the time of the accident. Sutake filed a complaint for personal injuries, naming both Doyles, the City of Huntington Beach and the Orange County Federal Credit Union. After exchanging sets of interrogatories with Sutake, the credit union brought its motion for summary judgment, which was granted.[1]

The complaint alleged the credit union's loan contract with Doyle required him to carry public liability insurance; Doyle was in breach of that contract; the credit union was also in breach because it was under the a duty to require Doyle to carry insurance for the benefit of the general public which it knowingly failed to do; and as a member of the general public, Sutake was a third-party beneficiary of the loan contract. By the time the credit union brought its motion for summary judgment, Sutake's theories of liability against it had broadened to include negligent entrustment and breach of a noncontractual duty to procure public liability insurance on the Datsun.

In declarations attached to its motion for summary judgment, the credit union established Doyle's auto loan payments commenced in December 1979 and ended in December 1983. During that time Doyle was the registered owner with the credit union holding the pink slip as legal owner of the Datsun. The pink slip was released to Doyle in January 1984. The loan and security agreement required Doyle to maintain insurance on the vehicle against loss by theft, fire and collision; there was no requirement that he purchase public liability insurance. The credit union never purchased any insurance for the Datsun. It began purchasing comprehensive and collision insurance for customers who did not furnish their own coverage in the third quarter of 1983 if the outstanding loan balance exceeded $1,000; at that time, Doyle's loan balance was under $1,000, so no insurance was purchased.

In her response to the motion, Sutake admitted she assumed the credit union had purchased its own insurance for the Datsun and public liability

---

[1]The credit union was also granted summary judgment against the City of Huntington Beach on its cross-complaint for indemnity. The city does not appeal the judgment.

insurance was required of the borrower.[2] Sutake asserted discovery was incomplete, but in her separate statement of disputed facts she revealed only disputes about questions of law.

■ Summary judgment is a drastic procedure and "should be used with caution so that it does not become a substitute for trial." (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 573 [142 Cal.Rptr. 716].) However, summary judgment is proper where the affidavits show, as a matter of law, the plaintiff cannot prevail against the moving party. (*County of Los Angeles* v. *Security Ins. Co.* (1975) 52 Cal.App.3d 808, 816 [125 Cal.Rptr. 701].) The case before us presents a question of law which the trial court correctly resolved.

■ On appeal, Sutake contends the credit union is under a common law duty to procure liability insurance on vehicles it finances and breach of that duty renders it liable for damages caused by its borrower. She argues Vehicle Code sections 460 and 16020,[3] when read together, evidence a legislative intent to impose the duty on vehicle finance companies.

Section 460 reads: "An 'owner' is a person having all the incidents of ownership, including the legal title of a vehicle whether or not such person lends, rents, or creates a security interest in the vehicle; [or] the person entitled to the possession of a vehicle as the purchaser under a security agreement . . . ." Section 16020, enacted in 1974, reads: "Every driver of, and owner of, a motor vehicle shall, at all times, maintain in force one of the forms of financial responsibility specified in Section 16021."

Prior to 1975, the financial responsibility laws (§ 16000 et seq.) required a driver to have proof of insurance or its alternatives only when he was held to an unsatisfied judgment resulting from operation of a vehicle. (*Skerlec* v. *Wells Fargo Bank* (1971) 18 Cal.App.3d 1003 [96 Cal.Rptr. 434].) The two reported cases dealing directly with Sutake's theory of liability were decided before enactment of section 16020. Both cases unequivocally held a lender on a vehicle has no civil liability to an injured party.

In *Skerlec* v. *Wells Fargo Bank, supra,* 18 Cal.App.3d 1003, the uninsured borrower caused an accident while driving the financed automobile. Plaintiff

---

[2]Sutake based this assumption on a phone call to the credit union by Sutake's attorney's law clerk after the date of filing the complaint. The law clerk's declaration states he identified the loan and asked if there was a policy affording public liability and damage coverage. He states he was told "the Credit Union was insured as always because Doyle's insurance was cancelled, and that they had been paid off by the insurance company in January 1984." He was later told by the same person there was no insurance, the credit union did not hold a lien on Doyle's vehicles and Doyle was not listed as a member.

[3]All statutory references are to the Vehicle Code unless otherwise noted.

contended the lender is liable when it finances a vehicle if it knows the borrower is not insured. The court disagreed, holding a lender does not have a legal duty to ensure the borrower has liability insurance. It distinguished *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609], where a construction lender was held potentially liable for damages to home buyers because it was deeply involved in the financial decisions that led to the problems.[4] "This conduct was far beyond that alleged in the present case . . . ." (*Skerlec* v. *Wells Fargo Bank, supra,* 18 Cal.App.3d at p. 1006.) It found the Financial Responsibility Act did not refer to the responsibility of lenders but to drivers. Furthermore, the court pointed out the same act specifically provided for the lender's nonpurchase of liability insurance. "Section 5604 of the Vehicle Code provides that a dealer or lending agency which requires its obligor to insure the vehicle shall, if the policy is obtained by the dealer or agency, and the policy does not insure against liability for personal injury, death or property damage, notify the transferee or obligor in writing on a document other than the policy." (*Id.,* at p. 1007.)

In *Altman* v. *Morris Plan Co.* (1976) 58 Cal.App.3d 951 [130 Cal.Rptr. 397], an injured pedestrian sought to impose liability on the company financing the vehicle that struck her. She contended the lender had a duty to see that the borrower carried liability insurance and that it negligently entrusted the vehicle to the borrower knowing the borrower was an incompetent driver who did not have liability insurance. The court cited and extensively discussed *Skerlec,* reaching the same conclusion that the lender was not liable to the plaintiff for permitting the borrower to drive without public liability insurance. While the court acknowledged the addition, subsequent to the time of the accident, of section 16020 requiring every driver and owner to maintain financial responsibility, it pointed out "other statutes indicate that it is the policy of this state not to impose this kind of liability on lenders." (*Id.,* at p. 958.) It cited section 17156, which exempts a lender from civil liability under the permissive use statute. And it underscored section 5604, which provides for notification to the borrower when the lender does not purchase liability insurance.[5]

---

[4]Great Western's involvement was as follows: "Great Western became much more than a lender content to lend money at interest on the security of real property. It became an active participant in a home construction enterprise. It had the right to exercise extensive control of the enterprise. Its financing, which made the enterprise possible, took on ramifications beyond the domain of the usual money lender." (*Connor* v. *Great Western Sav. & Loan Assn., supra,* 69 Cal.2d at p. 864.)

[5]Section 17156 provides in part: "A chattel mortgagee of a motor vehicle out of possession is not an owner within the provisions of this chapter." Section 5604 provides: "[E]very lending agency which, as the holder of any security interest in any . . . vehicle, requires its obligor to insure the vehicle, shall, if the required insurance policy is obtained by the . . . lending agency and the policy does not insure the . . . obligor against damages resulting

■ The Legislature did not intend the 1974 amendments to the Financial Responsibility Act to affect a lender's immunity from civil liability. In the bill enacting the amendments, the Legislature explained they were prompted by the California Supreme Court's ruling in *Rios* v. *Cozens* (1972) 7 Cal.3d 792 [103 Cal.Rptr. 299, 499 P.2d 979]. *Rios* held that since the statutory scheme imposed sanctions on an uninsured driver involved in an accident based on his potential liability, the sanctions could not be constitutionally imposed without notice and a hearing on the issue of fault. (*Id.*, at p. 794.)[6] The bill then explained the rationale for adopting a no-fault system of financial responsibility. "The Legislature finds that as a result of the difficulty of ascertaining a likelihood of fault in connection with vehicle operation, the number of financially irresponsible motor vehicle owners and operators has increased dramatically. The Legislature further finds that such fault determinations, and the costs associated therewith, do not further the purpose of the financial responsibility laws. Therefore, the Legislature declares that it is the policy of this state that those owning or operating motor vehicles on the streets or highways of this state shall be financially capable of providing monetary protection to those suffering injury to their person or property by reason of the ownership or use of such vehicles without regard to the negligence, liability, carelessness, or culpability of the owners or operators thereof, and further, that such capability shall be deemed a concurrent responsibility of such motor vehicle ownership or operation. . . ." (Stats. 1974, ch. 1409, § 1, p. 3085.)

The language of the bill does not evidence an intent to broaden the category of those to be held financially responsible; rather, it appears the changes were made to avoid the constitutional requirement of a noticed hearing prior to the imposition of sanctions. Significantly, when amending the Financial Responsibility Act, the Legislature left intact sections 5604 and 17106, which exempt a lender from responsibility for purchasing public liability insurance and from vicarious liability, respectively. ■ "It is assumed that the Legislature has in mind existing laws when it passes a statute" (*Estate of McDill* (1975) 14 Cal.3d 831, 837-839 [122 Cal.Rptr. 754, 537 P.2d 874]) and that it has knowledge of existing domestic judicial decisions. (*Id.*, at p. 839.)

---

from the ownership or operation of the vehicle arising by reason of personal injury to or the death of any person, or from injury to property, notify the . . . obligor of such fact in writing on a document other than the insurance policy. . . ."

[6]On appeal, the United States Supreme Court vacated and remanded for further proceedings on whether the California decision was based on state or federal guarantees. (*Dept. Motor Vehicles of California* v. *Rios* (1973) 410 U.S. 425 [35 L.Ed.2d 398, 93 S.Ct. 1019].) In 1973, the California Supreme Court reaffirmed its 1972 decision, certifying it was based on state as well as federal grounds. (*Rios* v. *Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696].)

██ A recent case has recognized the continuing viability of the lender's immunity with respect to vehicles. In *Brown* v. *Department of Veterans Affairs* (1986) 178 Cal.App.3d 392 [224 Cal.Rptr. 149], the court contrasted a lender's duty of notice regarding insurance under section 5604 with the absence of such a duty under the Military and Veterans Code: "While no cause of action is stated for the failure of a lender to require or to advise an obligor to obtain liability insurance (*Altman* v. *Morris Plan Co.* (1976) 58 Cal.App.3d 951, 956-959 [130 Cal.Rptr. 397]), where the lender undertakes to obtain 'full coverage' but fails to obtain liability insurance for the obligor or to give the required notice then a cause of action for negligence may be stated." (*Id.*, at p. 403, fn. 4.) In this case the credit union never undertook to obtain any type of coverage on Doyle's car; thus, it did not fall within the notice requirement of section 5604.

The summary judgment is affirmed. Orange County Federal Credit Union is entitled to its costs on appeal.

Crosby, Acting P. J., and Sonenshine, J., concurred.