NARDITO F. FORMANES and ) CIVIL ACTION NO. 87-558
FILOMENA VILLAFUERTE, )
)
      Plaintiffs, )
)
   vs. ) ORDER
)
CONCEPCION Y. SABLAN, ESTANIS)
E. SIMIRON, BANK OF GUAM, )
PACIFICA INS. UNDERWRITERS, )
INC., TOKIO MARINE AND FIRE )
INSURANCE CO., LTD., )
jointly and severally, )
)
      Defendants. )
_____ )

Defendant Bank of Guam (BOG) has filed a motion to dismiss Count II of the complaint which charges it with negligently entrusting a vehicle to co-defendant Simiron who apparently injured plaintiffs, while driving a vehicle, the purchase of which was financed by BOG.

## PROCEDURAL POSTURE OF THE MOTION

Although BOG has framed and styled its motion as a Rule 12(b)(6) motion to dismiss, the plaintiffs, in resisting the motion, have filed an affidavit of their counsel which refers to the deposition of the manager of BOG. Both counsel, at argument, referred to and discussed portions of the

deposition and the exhibits attached thereto.[*]  The question arises whether this "converts" the motion to dismiss to a Rule 56 Summary Judgment Motion.

Com.R.Civ.Pro., Rule 12(b) states that:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Where affidavits and documents are submitted pursuant to a motion to dismiss for failure to state a claim, the motion to dismiss is treated as a motion for summary judgment.  Goodman v. Parwatiker, 570 F.2d 801, 803 (8th Cir., 1978).

Since plaintiffs in their memorandum of points and authorities in opposition to defendant's motion to dismiss

---

[*] Plaintiffs' counsel's affidavit refers to the deposition of Mike Nahalowaa, General Manager for the Bank of Guam on Saipan.  On page 1 of the deposition it appears that opposing counsel stipulated to the procedure for the taking of the testimony of Mr. Nahalowaa.  At the argument for this motion, no counsel objected to the manner of the taking of the deposition nor the certification process.  Rule 29, Com.R.Civ.Pro. allows for such a stipulation and agreement and the court will consider any departures from the rules to be waived by all parties attending the deposition.

311

attached an affidavit discussing the deposition of Mike W. Naholowaa, which deposition was subsequently referred to and discussed by both counsel at the hearing on plaintiffs' motion, this motion will be treated as a motion for summary judgment pursuant to Com.R.Civ.Pro. Rule 56. Thus, the court must examine all the pleadings, depositions, and affidavits to determine if there is any genuine issue of material fact as to the allegations presented in Count II of plaintiffs' complaint in order to determine if defendant is entitled to a judgment as a matter of law.

## DISCUSSION

Count II of plaintiffs' complaint alleges, in essence, that BOG was negligent in permitting Simiron to take possession of the automobile which was subsequently involved in the accident that was the genesis of this lawsuit. Plaintiffs claim that by virtue of BOG's providing financing for the purchase of the automobile by defendants Simiron and Sablan from Joeten Motors, BOG was the legal owner of the automobile. Plaintiffs also assert that because BOG made an examination of the assets, expenses, and personal background of Simiron and required Simiron to obtain insurance on the vehicle, BOG knew that Simiron was not a legally licensed driver and therefore was not qualified to operate said vehicle.

However, the uncontradicted facts indicate that BOG merely purchased the contract (hereinafter "the contract") made between Joeten Motors and Sablan and Simiron. Naholowaa Deposition p. 4. As plaintiffs correctly point out, BOG's

312

decision as to whether to buy the contract was based upon the status of defendants' employment, their credit history, and any recommendation from the dealer, Joeten Motors. BOG also required that the customers, Sablan and Simiron, obtain an insurance policy on the automobile to be purchased. Naholowaa Depo. p. 8. At this point, plaintiffs conclude that because BOG required these things, BOG became "acquainted" with Simiron and knew or should have known that he was not a licensed driver. This assertion is not supported by the facts.

First of all, BOG never had any direct contact with Simiron. In purchasing the contract from Joeten Motors, BOG ran a credit check on Simiron, checked his employment records, sought a recommendation from Joeten Motors, and required Sablan and Simiron, as co-purchasers, to obtain insurance on the automobile. The Application for Credit and Insurance, Exhibit 9 attached to Naholowaa's Deposition, was completed by Sablan and included her driver's license number. Although Simiron signed this application form as a co-purchaser, the information contained therein pertained only to Sablan. This application was apparently sufficient for Sablan and Simiron to obtain the required insurance. From these facts, BOG could not possibly have known that *Simiron did not have a driver's license.*

Secondly, although 9 CMC § 2201, provides that no person, except those expressly excepted, may operate any motor vehicle upon a highway in the Commonwealth unless that person has been licensed, this does not, per se, prohibit the sale of a motor

313

vehicle to an unlicensed driver. See <u>Drake v. Morris Plan Co.</u>, 125 Cal.Rptr. 667, 670 (1976). Likewise, the mere financing of an automobile purchase between a dealer and an unlicensed driver is not prohibited by any Commonwealth statute. Cases have consistently held that a bank or commercial lender involved in a financial transaction in which an automobile is financed has no affirmative duty to investigate the driver before advancing funds. <u>McKenna v. Straughan</u>, 222 Cal.Rptr. 462, 466 (1986); <u>Altman v. Morris Plan Co.</u>, 130 Cal.Rptr. 397, 402 (1976); <u>Drake v. Morris Plan Co.</u>, supra, 125 Cal.Rptr. 667, 670. Thus, BOG was under no legal duty to conduct any investigation as to whether Simiron had a driver's license.

Finally, plaintiffs contend that BOG "was the legal owner of the vehicle driven by defendant Simiron." However, the Vehicle Code defines the "owner" of a vehicle as "the person entitled to possession of a vehicle as the purchaser under a conditional sales contract; the mortgagor of a vehicle ...." 9 CMC § 1103(e). Pursuant to 5 CMC § 2401 title to the vehicle passed to Sablan and Simiron when Joeten Motors delivered the vehicle to them. Consequently, plaintiffs' assertion that by virtue of taking a security interest in the vehicle, BOG was the "owner" of that vehicle is not supported by the laws of the Commonwealth.

Plaintiffs' opposition memorandum also cites Restatement (Second) of Torts, § 390 in support of their position. As this section deals with one who supplies a chattel to another the court finds this section to be inapplicable here since BOG

**314**

clearly did not supply any chattel to anyone.

In essence BOG merely loaned money on the security of the vehicle and its supervision of the transaction was limited to protecting its security interest. BOG's participation in the sale of the vehicle to Sablan and Simiron was so minimal and restricted that the transaction did not create a legal duty on the part of BOG, as a mere lender, to protect plaintiffs from damages allegedly caused by Simiron's illegal use of the vehicle. See, Drake v. Morris Plan Co, supra, 125 Cal.Rptr. 667, 670. In short, providing financing, under these facts, cannot be termed negligent entrustment.

Based on the foregoing, Summary Judgment is hereby entered on Count II in favor of the Bank of Guam and against the plaintiffs and Count II is dismissed.

SO ORDERED.

Dated at Saipan, MP, this 28th day of January, 1988.

Robert A. Hefner, Chief Judge