[No. D018212. Fourth Dist., Div. One. July 22, 1994.]

VALLE DE ORO BANK, N.A., Plaintiff and Appellant, v.
HENRY GAMBOA, Defendant and Respondent.

COUNSEL

Lambert & Rogers and Stephen F. Lambert for Plaintiff and Appellant.

R. Blair Reynolds as Amicus Curiae on behalf of Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## Opinion

**MILLER, J.***—Valle de Oro Bank, N.A. (Bank) appeals from a judgment following a jury verdict in favor of respondent Henry Gamboa (Gamboa) and from the trial court's denial of its motion for judgment notwithstanding the verdict. The Bank brought this action for damages for the balance due on a promissory note executed by Gamboa in consideration for a loan to purchase a motor home (also referred to as vehicle). The motor home was destroyed by fire when the unpaid balance on the loan exceeded the insurance coverage obtained by Gamboa on the vehicle. The issue on appeal is whether the trial court erred in allowing the jury to consider (and ultimately apply) the doctrine of mitigation of damages against the Bank by virtue of the Bank itself not having procured comprehensive insurance coverage on the vehicle.

We conclude, as the Bank contends, that under the facts of this case, as a matter of law, there was no duty on the part of the Bank to obtain insurance against the loss which occurred, and that it was error to allow the jury to consider the doctrine of mitigation of damages. Accordingly, we reverse the judgment for Gamboa and direct the trial court to enter judgment for the Bank for principal and accrued interest in light of the jury's finding Gamboa breached his contract with the Bank.

### Factual and Procedural Background

The facts of this case are essentially undisputed, and do not require protracted review.[1]

In March 1989, Gamboa, a sophisticated businessman and president of a family-owned and operated structural steel company, purchased a motor home for his personal use. The total cost of the vehicle was approximately $115,000 with Gamboa financing $79,075 with the Bank. Gamboa executed a promissory note in favor of the Bank, the terms of which included repayment of the loan in 120 monthly payments of principal and interest of $1,181.41 each, with the vehicle pledged as collateral.

Gamboa also executed an agreement to provide insurance which included:

"Insurance Requirements. I, Henry Gamboa ('Grantor') understand that insurance coverage is required in connection with the extending of a

---

*Judge of the San Diego Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]Respondent Gamboa has elected not to file a brief on appeal.

loan or the providing of other financial accommodation to me by Lender. These requirements are set forth in the security document. The following minimum insurance coverages must be provided on the collateral:

"Collateral: 1989 Overland 36 FL (Bus) VIN#
17N640120KW003714
Type. Comprehensive and collision.
Amount. $$79,075.00
Basis. Replacement value.
Endorsements. Loss payable clause to Lender.
Deductibles. $500.00.

"INSURANCE COMPANY. I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I understand that credit may not be denied solely because insurance was not purchased through Lender.

"FAILURE TO PROVIDE INSURANCE. I agree to deliver to lender, ten (10) days from the date of this Agreement, the required insurance as provided above, with an effective date of March 27, 1989, or earlier. I acknowledge and agree that if I fail to provide any required insurance or fail to continue such insurance in force, Lender may do so at my expense as provided in the applicable security document. The cost of any such insurance shall be added to the indebtedness as provided in the security document. I ACKNOWLEDGE THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL UP TO THE BALANCE OF THE LOAN; HOWEVER, MY EQUITY IN THE COLLATERAL WILL NOT BE INSURED. IN ADDITION, THE INSURANCE WILL NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND WILL NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS."

Initially, Gamboa obtained insurance for the motor home through the commercial policy issued for his company vehicles. Between February 20, 1990, and July 17, 1990, Gamboa did not notify the Bank the vehicle was in fact uninsured. In July 1990, upon learning his father wished to use the vehicle, Gamboa, according to his testimony, requested his secretary to obtain the loan balance amount from the Bank and purchase insurance for that amount from an insurance agent.

According to the testimony of Gamboa's secretary, someone from the Bank's loan department advised her the loan balance was $48,000, the

amount for which insurance was ultimately obtained.[2] Gamboa's father in fact applied for the insurance coverage, listing the purchase price of the vehicle at $48,000 with a January 1990 purchase date.

In April 1991, a fire destroyed the vehicle. Following the loss of the vehicle and receipt of the $48,000 from Gamboa's insurance policy, the unpaid principal balance of the loan, as of July 18, 1991, was $27,941.82.

Gamboa refused to pay the loan balance following a demand from the Bank which thereafter filed its complaint for damages seeking the unpaid loan balance with interest. Gamboa answered the complaint[3] and jury trial commenced on October 5, 1992.

Before the trial court, the Bank was ceaseless but unsuccessful in its efforts to bar the doctrine of mitigation of damages from the case. The Bank's motion *in limine* to exclude evidence it could have purchased comprehensive insurance coverage was denied and such evidence was admitted.[4]

The Bank thereafter timely objected to a jury instruction which permitted the jury to consider mitigation of damages. The trial court gave the instruction to which the Bank had objected, and denied the Bank's motion for nonsuit on the affirmative defense of mitigation of damages. The trial court indicated mitigation of damages was an issue that "belong[ed] to the trier of fact . . . ."

The jury returned a special verdict finding Gamboa breached his contract with the Bank, the Bank was not estopped from seeking to recover damages in excess of the $48,000 collected in insurance proceeds, the Bank had a duty to mitigate its damages, and the Bank failed to mitigate its damages. The Bank's motions for new trial and judgment notwithstanding the verdict, on the ground, inter alia, the doctrine of mitigation of damages did not apply to the facts of the case as a matter of law, were denied. Judgment was entered in favor of Gamboa.

---

[2]None of the witnesses employed or associated with the Bank confirmed any such conversation. Moreover, the jury returned a special verdict rejecting Gamboa's claim the Bank was estopped from seeking recovery of the unpaid loan balance based upon misrepresentation of the loan balance amount.

[3]Although Gamboa's answers to the complaint did not plead mitigation of damages as an affirmative defense, the Bank has always addressed the applicability of the doctrine on its merits.

[4]It was undisputed at trial that although the Bank received reports of insufficient insurance coverage on vehicle loans through an independent tracking company, the maximum amount of coverage against this type of loss available for purchase by the Bank to protect collateral on a motor home loan was $50,000.

DISCUSSION

The doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." (*Shaffer* v. *Debbas* (1993) 17 Cal.App.4th 33, 41 [21 Cal.Rptr.2d 110]; accord, *Seabord Music Co.* v. *Germano* (1972) 24 Cal.App.3d 618, 622-623 [101 Cal.Rptr. 255].) A plaintiff may not recover for damages avoidable through ordinary care and reasonable exertion. (*Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 85 [154 Cal.Rptr. 43].) The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable. (*Valencia* v. *Shell Oil Co.* (1944) 23 Cal.2d 840, 846 [147 P.2d 558].) "The rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights." (*Seaboard Music Co.* v. *Germano, supra*, 24 Cal.App.3d at p. 523.)

Typically, the rule of mitigation of damages comes into play when the event producing injury or damage has already occurred and it then has become the obligation of the injured or damaged party to avoid continuing or enhanced damages through reasonable efforts. For example, a landowner should avoid the certain loss of trees and crops by reasonably irrigating the land while a dispute over the contract price of water is resolved. (*Henrici* v. *South Feather Land etc. Co.* (1918) 177 Cal. 442 [170 P. 1135].) An owner's recovery for deprivation of use of a damaged vehicle is limited to the time reasonably required for making the necessary repairs. (*Valencia* v. *Shell Oil Co., supra*, 23 Cal.2d at p. 844.) One has an obligation to avoid an unwarranted enhancement of damages "through passive indifference or stubborn insistence upon a conceived legal right . . . ." (*Green* v. *Smith* (1968) 261 Cal.App.2d 392, 398-399 [67 Cal.Rptr. 796].) Indeed, BAJI Nos. 14.67 (Damages-Personal Injury-Duty To Mitigate) and 14.68 (Damages-Personal Property-Duty To Mitigate)[5] impose the duty to mitigate upon "a person who has been injured," or "whose property has been damaged . . . ."

The issue of mitigation of damages in this case arises in a unique context. Although no reported California case has dealt with application of the doctrine of mitigation of damages to a lender's action to collect on a contractual obligation for the repayment of a loan where the collateral to a loan was destroyed and the lender did not exercise a contractual option to insure against the loss, case law analysis discloses the doctrine is used sparingly in the contract or commercial context.

In *Seaboard Music Co.* v. *Germano, supra*, 24 Cal.App.3d 618, the lessor of a jukebox and pool table sued a tavern owner for damage for failure to

---

[5]BAJI Nos. 14.67 and 14.68 (1991 rev.) (7th ed. pocket pt.).

make lease payments. The argument the lessor was required to mitigate damages by releasing the equipment it received back was rejected by the court. The court reasoned one who is engaged in the business of leasing equipment is not required to sacrifice additional leases it might negotiate so that repossessed equipment may be released. As the *Seaboard* court articulated, ". . . the rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights." (*Id.* at p. 623.)

In *Capaldi* v. *Levy* (1969) 1 Cal.App.3d 274 [81 Cal.Rptr. 629], defendant contracted to purchase all the corporate stock of a company. Defendant made a down payment, took possession of the corporate property, but thereafter refused to pay the balance of the purchase price and abandoned the property. The *Capaldi* court rejected defendant's argument the sellers were required to mitigate damages: "Appellant contends that it was the duty of the sellers to mitigate damages from and after the time when he repudiated the purchase agreement and abandoned the property. The sellers, however, having fully performed their obligations under the written agreement and escrow instructions, had no further duty with respect to the operation of the corporation, the books, records and assets of which had been delivered to appellant. It is obvious that the doctrine requiring mitigation of damages has no application to the facts of this case." (*Id.* at p. 282.)

In *Vitagraph, Inc.* v. *Liberty Theatres Co.* (1925) 197 Cal. 694 [242 P. 709], a distributor of photoplays sued to recover damages resulting from defendant's failure to pay the agreed film rental value. While upholding the trial court's ruling defendant had failed to prove facts in mitigation of damages, the court noted: "No case has been called to our attention wherein this rule as to the duty to minimize the damages has been applied to a situation in which the defendant's breach of duty consisted solely of the failure or refusal to pay a liquidated sum of money when due, and it may perhaps be doubted that the rule is applicable to such a case. It would seem that the situation of the respondent is in this respect analogous to that of a lessor whose lessee has repudiated the lease and given notice that he will not perform it. It is held in such case that the lessor may elect to stand upon his contract and may recover the full rent for the term, when it has become due, in accordance with the terms of the contract, or he may elect to treat the contract as abandoned and relet the premises to another tenant, in which event he can recover as damages only the difference between the rent he was to receive and the rent actually received from the subsequent tenant . . . ." (*Id.* at pp. 698-699.)

Other California cases have dealt with the issue of whether there exists under certain circumstances a general or common law duty to procure

insurance coverage. In *Morales* v. *Fansler* (1989) 209 Cal.App.3d 1581 [258 Cal.Rptr. 96], it was held a lessor had no duty to an injured third party to ensure a tenant's compliance with a lease provision requiring $500,000 in liability insurance. Similarly, in *Sutake* v. *Orange County Federal Credit Union* (1986) 186 Cal.App.3d 140 [230 Cal.Rptr. 351], the lender and legal owner financing the purchase of an automobile owed no duty to an injured motorist to procure liability insurance on the vehicle where the registered owner/driver had failed to do so. (Accord, *Altman* v. *Morris Plan Co.* (1976) 58 Cal.App.3d 951, 956-959 [130 Cal.Rptr. 397]; *Skerlec* v. *Wells Fargo Bank* (1971) 18 Cal.App.3d 1003, 1007 [96 Cal.Rptr. 434].)

By contrast, where a lender orally agrees or represents it will maintain its practice of procuring insurance for the financed vehicles of its long-time customer, an action for breach of the agreement can be maintained for fire damage to a vehicle for which no insurance coverage was in fact provided. (*Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135 [145 Cal.Rptr. 623].) In this case, of course, there was no evidence of any such practice or representation.[6]

Perhaps no California case better captures the spirit of the equities which exist in favor of the Bank in this case than *Ash* v. *Soo Sing Lung* (1918) 177 Cal. 356 [170 P. 843]. In *Ash*, the defendant agreed to purchase, harvest, and market a crop of peaches on plaintiff's property. The defendant failed to tie up tree limbs as he was obligated to do and the plaintiff sustained damage to his trees as a result. Because the plaintiff discovered some tree damage but did not avert further damage by tying the trees himself, the trial court instructed the jury on mitigation of damages. The jury's verdict was in favor of the defendant. The Supreme Court reversed judgment for defendant and held: "Conceding that the rule contended for by the defendant requiring one threatened with injury to his property through the breach of an obligation respecting the same undertaken by another, to do all in his power to prevent or minimize the loss to himself impending upon such breach, to be a correct statement of the law, it must be apparent that the foregoing instruction went far beyond the boundaries of this rule; for in effect it charged the jury that the plaintiff could recover no damages from the defendant for injuries arising from the latter's breach of his obligation if the plaintiff could have done himself what the defendant ought to have done, but failed to do under the terms of his contract. A rule of law thus broadly stated would place a premium upon the defendant's breach of his agreement, and results in

---

[6]Other jurisdictions have recognized the rule a mortgage lender is under no duty to insure the mortgaged premises against damage. (*Hassell* v. *Sterling Federal Savings and Loan Ass'n* (1971) 132 Ill.App.2d 1005 [271 N.E.2d 7, 9]; *Home Federal Sav. & Loan* v. *Dooley's, etc.* (App. 1985) 149 Ariz. 105 [716 P.2d 1042, 1044].)

entirely transferring to the plaintiff's shoulders the burden of the defendant's violated obligation." (*Id.* at pp. 361-362.)

■ In this case, the trial court erred in allowing the doctrine of mitigation of damages to defeat the Bank's right to recover the unpaid balance on the note executed by Gamboa. Use of the doctrine in this case did not provide a shield against the unwarranted piling up of damages, but rather constituted a sword against the Bank's contractual right to recover damages resulting from Gamboa's admitted breach of contract. The Bank had fully performed under the contract by disbursing loan proceeds of $79,000 to Gamboa. The contractual obligation to secure comprehensive insurance on the vehicle was Gamboa's, not that of the Bank. When Gamboa allowed his insurance coverage to lapse and when he thereafter arranged for renewal of coverage for less than the amount of the loan balance, no damage-producing event had yet occurred. The vehicle which collateralized the loan still existed and Gamboa continued to make scheduled loan payments. Simply put, there was no damage for the Bank to mitigate, and it was still the Bank's contractual *option*, not *obligation*, to secure its own insurance coverage.

Under the circumstances of this case, it was error to allow the jury to consider and apply the doctrine of mitigation of damages. The Bank was entitled to recover the unpaid balance of the promissory note executed by Gamboa together with interest.

### DISPOSITION

The judgment is reversed. The trial court is directed to enter judgment for the Bank for principal and accrued interest.

Kremer, P. J., and Froehlich, J., concurred.